BATCHELDER & SNYDER COMPANY *vs.* SACO SAVINGS BANK.

York.    Opinion March 3, 1911.

*Guaranty. Banks and Banking. Ultra Vires. Letter of Credit. Construction.*

The defendant savings bank owned a summer hotel, and on February 16, 1907, issued to one Davis, who was in some way interested in the management of the hotel, the following letter of credit: "You are authorized to contract for material and supplies for Summit Spring Hotel at Poland and the same will be paid for by us." In July, in the same year, the bank contracted to sell the hotel to Davis, who was to manage it on his own account, the bank agreeing to furnish fixtures, furniture and supplies to a limited amount "to get the hotel opened and in running order." The sums paid on these accounts were to be added to the purchase price. Davis operated the hotel during the seasons of 1907 and 1908 under this agreement. Davis showed the letter of credit to the plaintiff's selling agent in 1907, but purchased no goods of the plaintiff that year. In 1908 the plaintiff sold, on the order of Davis, the goods to recover the price of which this suit is brought, and charged them to the "hotel." It claims to have sold them on the credit of the defendant, as evidenced by the letter of credit. It also claims that Davis was in fact the agent of the bank.

*Held:* 1. That a finding that Davis was the agent of the bank could not be sustained.

2. That a jury would be warranted in finding under the circumstances that the plaintiff might properly rely upon the letter of credit as continuing in 1908, and that an order of nonsuit, which in effect involved a ruling as a matter of law that the letter of credit was good for 1907 only, was erroneous.

3./ It is not ultra vires for a savings bank, owning a hotel and wishing to
√ sell it, to expend reasonable sums of money to put it into condition to sell
well, nor to agree with the intending purchaser to advance money to get
the hotel opened and in running order, nor to issue a letter of credit to
effect the same purpose.

On exceptions by plaintiff.    Sustained.

Assumpsit    on    an    account    annexed    to    recover    the    sum    of
$1092.81 for goods sold and delivered.    The writ also contained
an omnibus count.    Plea, the general issue with brief statement as
follows :    "That the contracts declared upon in plaintiff's writ
were beyond the lawful authority of the defendant to make and
were forbidden by law, and the defendant did not and never has
received any benefit from said contracts."    At the conclusion of the
plaintiff's evidence, and on motion of the defendant, the presiding
Justice ordered a nonsuit and the plaintiff excepted.

The case is stated in the opinion.

*McGlauflin & Briggs, and Foster & Foster,* for plaintiff.
*Geo. F. & Leroy Haley,* for defendant.

SITTING :    WHITEHOUSE, SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

SAVAGE, J.    This is an action of assumpsit upon an account
annexed to recover for goods sold and delivered.    There is also an
omnibus count.    The case comes up on the plaintiff's exceptions to
an order of nonsuit, made after the plaintiff's evidence had been
introduced.    Other exceptions were taken during the trial, but they
do not appear in the bill of exceptions.    The question is whether
assuming that evidence to be true, the jury would have been war-
ranted in returning a verdict for the plaintiff.    If so, the ruling
was wrong, and the exceptions must be sustained ; otherwise, they
should be overruled.

The case shows that the defendant was the owner of the Summit
Spring Hotel in the town of Poland.    On July 10, 1907, it made a
written contract with one George H. Davis to sell him the hotel, for
which Davis agreed to pay $100,000, with interest from that time.
The contract contained the following clause :—"The bank agrees
to furnish the sum of fifteen- thousand dollars for the purpose of

erecting a stable, also a garage, and improving the property. This sum of fifteen thousand dollars to be added to the purchase price of the property above mentioned, and to be furnished in such sums as may be required to pay for the improvements now being made on the property, and to furnish fixtures, furniture and supplies to get the hotel opened and in running order. The bank is authorized to charge up to the property and add to the above mentioned purchase price all expenses, including this fifteen thousand dollars, and also including taxes, and it is agreed that the bank is authorized by Davis to carry an insurance on the property equal to the amount of the bank's investments in the property, the premium on said insurance to be also charged up against the property, total to enter into and be a part of the purchase price." There is no evidence that Davis paid any part of the purchase price.

Previously the bank had given Davis the following letter:

"Saco Savings Bank.

Saco Maine, Feb 16, 1907.

George H. Davis, Esq.
        Portland, Maine.

Dear Sir :—

        You are authorized to contract for material and supplies for Summit Spring Hotel at Poland and the same will be paid for by us.

Very truly yours,

Frank W. Nutter, Treas."

This letter of credit was shown by Davis to the plaintiff's traveling salesman, Baker, in June, 1907, and the substance of it was communicated by the salesman to the plaintiff. No goods, however, were sold by the plaintiff to Davis or for the hotel in 1907.

The hotel was a summer hotel, and was run by Davis during the summer season of 1907. And after July 10 of that year, it must be presumed that it was run in accordance with the written contract of that date between Davis and the bank, Davis being in possession under the agreement to purchase and managing the hotel on his

own account, and the bank being under contract to advance money "to get the hotel opened and in running order," the same to be added to the purchase price.

Davis was still in possession and was managing the hotel through the season of 1908. He testified, and we must assume it to be true, that in 1908 the hotel was run under the same agreement as in 1907. In June of 1908 Davis told Baker that he still had the letter of credit. In July of that year Baker called upon Mr. Nutter, the treasurer of the Bank, and was told by him that "the house hadn't been a very paying proposition the year before, and that he didn't expect any money from the house until the bills were paid." Nothing was said by either about the letter of credit.

The first of the goods, for the price of which this suit is brought, were furnished by the plaintiff August 15, 1908. But Baker had taken an order from Davis in the previous June, and those goods were apparently paid for out of the hotel receipts. On the plaintiff's account the goods were charged to the "Summit Spring House, Poland, Me." But we think the evidence would warrant a finding that they were sold on the credit of the defendant, as evidenced by the letter of credit.

The claim of the plaintiff, as set forth in the bill of exceptions, rests upon one or both of two grounds, namely, (1) that the bank is liable to the plaintiff by reason of the letter of credit, and (2) that in ordering the goods Davis was the agent of the bank, that the bank was itself running the hotel on its own account, with Davis as manager, and so it became liable for debts contracted in its behalf by Davis.

The plaintiff undertook to show the latter proposition by connecting the bank with the actual management of the hotel, but we think the evidence in this respect is insufficient. It is doubtless true that the bank paid close attention to the management of the hotel. There was good reason why it should. It watched the accounts of receipts and expenditures, it prevented or settled attachments, it guaranteed the payment of some bills, it had given at least one letter of credit, the one in this case. But in this there was nothing inconsistent with the relations and rights and obligations

of the bank and Davis under the contract, which Davis, plaintiff's witness, testifies was operative in 1908. The bank owned the hotel. It wanted to sell it. It had put it into the hands of an intending purchaser, without payment of any of the price. Whether the agreement for purchase could be carried out depended upon whether the hotel could be operated profitably. The bank was under obligation to advance money for supplies and other things. All that it furnished only added to the already heavy weight of a doubtful investment, and might be lost if the hotel was unsuccessfully managed. It had a most direct interest in keeping the house open, and in the state of the accounts, in the receipts and disbursements. But we think in view of Davis's testimony that there is no ground for a finding that the bank was operating the hotel on its own account in 1907 and 1908.

The plaintiff also claims a right to recover on the ground that some of the earnings of the hotel, which might otherwise have been used to pay for these supplies, were used to pay for improvements to the property which subsequently enured to the benefit of the bank. But we cannot see any reason for supporting this claim.

We think the plaintiff must rest, if it can rest upon anything, upon the defendant's letter of credit to Davis. The case does not show that the plaintiff, or its salesman, Baker, knew of the contract relations between Davis and the defendant, though Baker testifies that he knew that Davis was "interested" in the property.

It is not denied, that if the plaintiff had sold goods for the hotel in 1907, on the strength of the letter of credit, the bank would have been liable to pay for them, unless the defense of ultra vires, to be noticed hereafter, would avail it. But the defendant contends that the letter of credit was good only for a reasonable time, and that under the circumstances was good only for the year 1907. The plaintiff says it continued to be effective, as to the plaintiff, who had no notice of any revocation, during the year 1908. Upon its face it is unlimited in time. Whether it was intended as a continuing letter of credit, or, what is the same thing in this case, whether the plaintiff could properly rely upon it as continuing, depends not only upon the language used in the letter, but upon the circumstances

and conditions to which it applied.    The letter is to be read in the light of those circumstances and conditions.    This is familiar law. Each case must depend upon its own conditions.

In this case, on the one hand, as the defendant says, the Summit Spring Hotel was a summer hotel.    It was open in the summer time, and closed to the public in the fall, winter and spring.    Each year's operation was separate and distinct from that of the year previous. And it is urged that the argument to be drawn from this condition is well nigh conclusive against the plaintiff, not only as to the actual intent of the bank, but as to any inference which the plaintiff might properly draw from the letter.    The plaintiff, so it is claimed, ought to have understood it to be applicable only to the season of 1907.

On the other hand, the plaintiff says it was not so limited in terms, that it was never actually revoked, that nothing to indicate a revocation was made known to the plaintiff, that the hotel was run under the same terms and conditions in 1908 as in 1907, that the plaintiff found Davis still in the management in 1908, apparently with the same relations to the property, and with the same powers as to obtaining credit as the year before, and so that there was a continued holding out by the bank of the authority of Davis to buy on its credit.

The question is a close one.    The presiding Justice in the course of the trial ruled as a matter of law that the letter of credit was not effective beyond the year 1907, and this appears to have been one of the grounds for the order of nonsuit.    But we think that under the circumstances, the letter of credit might properly be deemed continuing, as to the plaintiff, and that a jury would be warranted in so finding.    It is not purely a question of law.    It calls for the application of the rules of law to the facts to be found, or to be legitimately inferred.    This is the province of a jury.    The order of nonsuit on this ground was therefore erroneous.

But the defendant further contends that the plaintiff was not injured by the ruling, because it is claimed that it cannot recover in any event.    This claim is based upon the doctrine of ultra vires. The argument is this.    A savings bank is a corporation with limited powers.    Its authority to make investments is limited by statute,

and the kinds of investments it may make are prescribed. It has no authority to go beyond the limits. It has no authority to use the money of depositors in the hazardous and speculative business of conducting a summer hotel, nor to bind itself by letters of credit to pay such money on account of bills contracted in running a hotel business.

It may be conceded that as a general rule the principle stated is the true one. But we think it does not apply to the situation in this case. The defendant Savings Bank had a right to own the hotel, for it might come into the title by the foreclosure of a valid mortgage. Owning it, it might sell it. It had the right to sell it at the best advantage, to get the most for it that it could. That was a duty it owed to the depositors. In order to sell it for all that could be got, we think it had the incidental right to expend reasonable sums of money to put it into condition to sell well. It needs no argument to show that a defunct summer hotel will not sell well. Nothing is more dead than a dead summer hotel. To get an advantageous sale, it must almost necessarily be made into a going concern. The hotel must be operated. Public patronage must be solicited and secured. The accomplishment of the desired result may take one, two, or more years. We think that in this case both Davis and the bank contemplated that it might take more than one year to make the operation successful. The foregoing are plain business considerations. And we think it is not ultra vires for a savings bank to do such things for the purpose of making a good sale of hotel property that it owns. It is an incidental power in aid of an admitted power to sell.

And the same principles apply, if the bank has made a contract of sale at an advantageous price, and the power of the purchaser to complete the purchase and pay the price depends upon his ability to make the hotel business a successful money making operation. In such case the hotel must be opened and operated, or the bank cannot sell. That seems to be this case.

Under such conditions, we think it was not unlawful for the defendant bank to agree to advance money to the intending purchaser "to get the hotel opened and in running order," the same

to be added to the purchase price, nor was it unlawful to issue, or continue, a letter of credit to effect the same purpose. Whether it was a wise exercise of power in this particular case is not the question now. That question is, did the bank have the power? We think it did.

*Exceptions sustained.*