MAINE UNEMPLOYMENT COMPENSATION COMMISSION

*vs.*

MAINE SAVINGS BANK.

Cumberland.    Opinion, January 30, 1939.

*John S. S. Fessenden,* Assistant Attorney General, for plaintiff.
*Verrill, Hale, Dana & Walker,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.    This is an action to recover a contribution alleged to be due from the defendant with respect to wages payable for em-

ployment during the first quarter of the year 1937, under the provisions of our Unemployment Compensation Law, P. L. of Maine, 1935, Chap. 192.

It comes before this Court on an agreed statement of facts, wherein we note that defendant is and has been since 1859 operating under and governed by the law as applicable to all savings banks in this state; that, for the first calendar quarter of 1937 defendant reported and paid the Commission, as its net contribution, the sum of $1857.09; that in the course of its banking business it has become the owner of, or has taken possession of, a number of parcels of real estate; in most cases by virtue of foreclosure of mortgages taken to secure loans, the "one or two exceptions" being where a release deed was accepted, obviating the expenditure consequent on foreclosure; that in the period under survey defendant was operating or managing "approximately one hundred forty parcels of real estate," repairs and maintenance being superintended by one servant, carried on defendant's regular payroll, devoting approximately one-half of his time to this work, and assisted by another servant of the bank, also on the regular payroll, "who spends a portion of his time collecting rents and interviewing tenants," the wages and salaries of both being carried on the payrolls of defendant, reported as above, and on which contributions were paid; that defendant provided for such upkeep as it deemed requisite on contracts with individuals, partnerships or corporations engaged in one or more of the building trades, in a few cases after competitive bids, but in most paying the contractor on the basis of labor and materials furnished under the contract; that in no case did the defendant exercise any control over the employment or discharge of laborers, or supervision over such laborers; that the charge for such labor was included in the price fixed in the contract together with contractor's profit, a sum greater than actual wages paid; that, during said quarter, $2944.76 was paid to workers by the individuals, partnerships or corporations, on contracts with defendant for the repair, improvement or alteration of defendant's real estate holdings, the contribution claimed as accruing and payable on that sum, by agreement amounting to $53.00, and not paid by defendant to plaintiff.

Suit is authorized by Section 14 (b) of the Act.

The agreed statement further provides, and shows:

"None of the individuals, partnerships or corporations engaged by the defendant to repair, alter, or improve the defendant's real estate were 'employers' as defined in the Unemployment Compensation Law.

"On the nineteenth day of August, 1937, due notice of the alleged contributions due the plaintiff was given to defendant by the plaintiff and payment of said contributions duly demanded.

"It is agreed that the foregoing statement of facts does not involve and should not be applied to the determination of the status of an individual who deals directly with the defendant either by contract or otherwise in the performance of individual services actually performed by himself alone and without authority to engage persons to assist him in the performance of such services."

Other statements of fact, as we view the case, may not be pertinent to decision.

Plaintiff contends that the $53.00 computed as above is due, together with interest, from April 1, 1937; defendant contesting the claim as not within the law providing for contributions under the Unemployment Compensation Act.

To be more explicit, defendant contends that contributions accrue and become payable to the Compensation Commission, in its case, only when it, as an employing unit "contracts with or has under it any contractor or sub-contractor for any work which is part of its usual trade, occupation, profession, or business," (Quotation of the portion of Section 19e of the Unemployment Commission Law, applicable here).

It is agreed that the sum sued for is not due, unless it accrues within the meaning of the temporal clause quoted above.

The learned counsel for plaintiff reveals the simple nature of this controversy by suggesting that the decision of the Court must turn upon this question: "Is the repair, alteration, maintenance and improvement of (its) real estate holdings a part of the usual trade, occupation, profession or business of the defendant?"

Defendant was incorporated under Chap. 328, P. and S. Laws of 1859, "with all the powers and privileges conferred upon similar institutions by the laws of said State, and subject to all the liabilities and restrictions thereof."

It took the powers and privileges granted to it under the statutes then in force, Chapters 46 and 47, Statutes of 1857. It has continued, in trade, occupation, profession or business to the present time, changed only in its name.

It is a creature of statute, with strictly limited powers, its investments materially restricted and its operations subject to the supervision of the state bank Commissioner.

It operates under general statutory provisions as follows:

"Savings banks and institutions for savings, incorporated under the authority of the state, may exercise the powers and shall be governed by the rules and be subject to the duties, liabilities, and provisions in their charters, in the following sections, and in the general laws relating to corporations, unless otherwise specially provided."

R. S., Chap. 57, Sec. 13.

In the field of investment in mortgage loans on real estate savings banks are limited to investment:

"In notes or bonds secured by first mortgages of real estate in Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut and Vermont, to an amount not exceeding 60% of the market value of such real estate, or in notes or bonds secured by first mortgages which the Federal Housing Administrator has insured or has made a commitment to insure. No bank shall have more than 60% of its deposits invested in such mortgages."

R. S., Chap. 57, Sec. 27 — XIV, as amended by Chap. 101, Sec. 1, P. L. 1937.

Also:

"A savings bank may hold real estate in the cities or towns in which such bank or any branches thereof are located, to a total amount not exceeding five per cent of its deposits or to an amount not exceeding its reserve fund; but these limita-

tions shall not apply to real estate acquired by the fore-closure of mortgages thereon, or upon judgments for debts or in settlements to secure debts."

R. S., Chap. 27, Sec. 30, as amended by Sec. 5, Chap. 222, P. L. 1931.

It seems clear from the statutes here quoted, that the legislature intended to prohibit the holding by a savings bank of real estate beyond what should be sufficient for banking rooms as that term is understood by bankers; except that, within limits, real estate acquired by the foreclosure of mortgages thereon, or upon judgments to secure debts are authorized holdings.

Not that there is authority in our legislation for a savings bank to hold real estate, other than its banking rooms indefinitely.

We know of no law authorizing a savings bank to take up the business of a real estate corporation.

But it may have title as mortgagee to parcels of real estate, and cause the same to ripen into absolute title, as the exigencies of its various mortgagors may dictate.

It is common knowledge that mortgage indebtedness on real estate, taken ten years ago at less than the maximum of 60% of the valuation of the property, even in the rare cases where interest has been paid annually may in general be said to exceed the market value of the security today.

And in great areas of Maine, at this writing, the factors setting up market value are definitely absent.

A slump, all but catastrophic in every state of the union, and terrific in Maine, followed by depression, recession and their spawn, in the fountains of investment in the business of banking, has justified the belief which we entertain that no legislature in our history ever intended that the business of a savings bank should include the real estate business.

It follows that contracting for "repairs, improvements and alterations to such parcels of real estate," quoting from the statement of facts, as any man, even the most prudent, may frequently find himself bound to do, in order to make the loss in any ten lean years less formidable, is not contracting "for any work which is part of its usual trade, occupation, or business," when done by the Maine Savings Bank.

Expenditure on the part of the defendant here is merely incidental to the banking business, the business of the defendant, as contemplated by the authors of the Maine Unemployment Compensation Law.

*Batchelder & Snyder Co.* v. *Saco Savings Bank*, 108 Me., 89, 79 A., 13; *Gardiner Trust Co.* v. *Augusta Trust Company*, 134 Me., 191, 182 A., 685.

No cases in other jurisdictions have been cited, nor do we find any that will rule here.

We conclude that it is the duty of defendant to keep its real estate, to which it has acquired title in the course of its business, and strictly in accordance with law, in physical condition to bring fair value on sale, as incidental to its distinctive business of receiving the money of its depositors and letting it out on proper investments, just as expenditure in purchasing and maintaining costly vaults is incidental to the business of a savings bank, although it is not the business of such a bank to keep great sums of money in storage.

*Judgment for defendant.*