George O. CLAYTON, d/b/a North Nenana Wood Specialties, Appellant,

v.

STATE of Alaska, Appellee.

No. 4116.

Supreme Court of Alaska.

Aug. 3, 1979.

Franklin D. Fleeks, Fairbanks, for appellant.

Douglas K. Mertz, Asst. Atty. Gen., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION
PER CURIAM.

This appeal requires us to decide whether the Commissioner of Labor abused his discretion in requiring George O. Clayton to pay unemployment insurance taxes[1] on payments he made to contract workers. We conclude that the commissioner acted permissibly.

In 1974, Clayton was the sole proprietor of North Nenana Wood Specialties, whose business was the cutting and marketing of logs. That year, Clayton bid on and received a lease to harvest timber from a state-owned parcel near Nenana called NC–88. He therefore engaged a number of persons to cut the wood and deliver it to his mill in Nenana. These workers were paid according to their production. They owned their own equipment, worked without supervision, and set their own hours. Most of these persons had at other times worked for other operators in the area.

In July 1975, Richard Anderson, a state field auditor, heard as a result of a general investigator of Nenana loggers that Clayton had not paid any unemployment insurance taxes on these NC–88 workers. Anderson checked with Clayton's accountant in Fairbanks and learned that Clayton's federal tax return for 1974 indicated payment for subcontract labor. As a result of this information, Anderson on December 17, 1975, sent Clayton a notice of assessment for $4,530.00.

Clayton appealed the assessment and in response sent Anderson copies of all his contracts relating to the work on NC–88. Anderson went to the Fairbanks office of the Department of Revenue to determine which of these "contractors" had business licenses; he found that three did.[2] However, he decided to take no further action with regard to the contracts that Clayton gave him, and did not interview any of the individuals listed in those contracts. Anderson also did not request any further information of Clayton.

---

1. Article 2 of the Alaska Employment Security Act, AS 23.20, sets up an unemployment compensation fund. Article 3 requires that employers make contributions to this fund "with respect to wages for employment." AS 23.20.-165(a). The rate of contribution is specified in several sections of articles 3 and 4.

2. Anderson testified that those with business licenses might well have been legitimately self-employed, and thus Clayton would not be liable for contributions for their services. Anderson also checked the "Yellow Pages" for the area to see if any of the NC–88 workers had listed themselves there.

An Employment Security Division referee held a hearing on April 25, 1977. On September 30, the Commissioner of Labor affirmed the assessment. Clayton then appealed to the superior court, which also affirmed, on April 26, 1978. That court, however, reduced the assessment to $2,204.00, accepting the commissioner's concession that Clayton's payments to the three contractors who had business licenses were indeed exempt. Clayton has appealed again.

■ This case turns on AS 23.20.-525(a)(10), which reads:

> "*Employment* defined. (a) In this chapter, unless the context otherwise requires, "employment" means

> .  .  .  .  .

> (10) service performed by an individual whether or not the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the department that

> (A) the individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact;

> (B) the service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

> (C) the individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

**3.** Sec. 23.20.230. Arbitrary reports. If an employing unit fails or neglects to make or file a report or return required by this chapter or a regulation under this chapter, the department, upon the basis of knowledge available to it, may arbitrarily make a report on behalf of the

It is evident from the statutory requirement of a showing "to the satisfaction of the department" that the Department of Labor is vested with broad discretion in deciding whether an "employment" relationship exists. We can only reverse the commissioner's decision if we find that he abused this discretion. Further, under AS 23.20.230,[3] a wage report compiled by the state because of an employing unit's failure to file one is considered prima facie correct. Thus, Clayton has the burden of proving a non-employment relationship in order for us to reverse the commissioner.

■ Under AS 23.20.525(a)(10), Clayton must prove the factors listed in (A), (B) and (C) to win an exemption from the tax. *Employment Security Commission v. Wilson*, 461 P.2d 425, 429 (Alaska 1969).[4] The commissioner concluded that Clayton had met the freedom from control test of (A), but not the requirements of (B) and (C). With regard to (B), Clayton focuses on the second part requiring that the service be performed outside of all the places of business of Clayton's enterprises. He claims that his only place of business was his mill in Nenana, and that the workers at the NC–88 leasehold premises were thus performing services "outside of all [his] places of business." This argument is simply unrealistic. Clayton's business involves processing lumber; NC–88, for which he bid on and won a contract to harvest timber, must be considered a place of business in 1974. We agree with the Washington Court of Appeals' decision finding an employment relationship in *Miller v. Washington State Employment Security Department*, 3 Wash. App. 503, 476 P.2d 138, 140–41 (1970), a case involving virtually identical facts and statutory provisions.

■ As to (C), both Clayton and the commissioner agree that Clayton must establish that his contractors have "an enterprise cre-

employing unit. The report is considered prima facie correct.

**4.** *See generally* Asia, *Employment Relation: Common-Law Concept and Legislative Definition*, 55 Yale L.J. 76 (1945).

ated and existing separate and apart from the relationship with the particular employer, an enterprise that will survive termination of that relationship." *Schuffenhauer v. Department of Employment Security*, 86 Wash.2d 233, 543 P.2d 343, 347 (1975) (citation omitted). Clayton claims that he met this test by showing that his contractors owned their own equipment and had been employed by other loggers in the area. We believe that the commissioner can legitimately require a greater showing than this. *Baker v. Cameron*, 240 Or. 354, 401 P.2d 691 (1965), found an employment situation where

> a substantial number of [the disputed workers] are not "customarily" entrepreneurs, "engaged in an independently established business." They "customarily" work for only one, two or three employers. When work for such employers is not available these men become unemployed.

*Id.* 401 P.2d at 696. Clayton has not shown that his contractors occupied a different position.[5] We therefore conclude that the commissioner was warranted in holding that Clayton failed to carry his burden of proof under (C).

■ Clayton singled out for special consideration his contract with Don Pearl Trucking.[6] A trucker owning his or her rig may well be an independent contractor for purposes of the Employment Security Act.[7] *See St. Regis Paper Company, Forest Products Division v. Unemployment Compensation Commission*, 487 P.2d 524 (Mont. 1971). But Clayton presented no evidence of the relationship between Don Pearl and him other than the receipt indicating that Pearl had furnished services. We find that the commissioner acted within the bounds of his discretion in finding that this description

alone did not meet Clayton's burden under AS 23.20.525(a)(10).[8]

We are somewhat concerned here by the seemingly incomplete investigation that the Department of Labor undertook before assessing Clayton for taxes. It would have been preferable, in our opinion, for field auditor Anderson to have attempted to contact the individuals who had worked on NC–88, and to have spoken again with Clayton after Clayton had sent him the contracts. But the statute clearly requires Clayton to prove any claimed errors in the assessment, and he simply did not present enough evidence in his favor.

The judgment of the superior court is AFFIRMED.

---

5. Indeed, field auditor Anderson testified that he only knew of about three logging operations in the Nenana area.

6. He paid Don Pearl $11,792.00 to "[f]urnish equipment and supplies to load and haul logs from State Timber Sale NC 88 to North Nenana."

7. The trucker would likely: (A) be free from the employing unit's control, (B) work outside of all the employing unit's places of business, and (C) be customarily engaged in an independent trade.

8. In addition, the commissioner could rely on the fact that Don Pearl apparently did not have a business license registered in Fairbanks.