**OUTDOOR WORLD CORPORATION**

v.

**MAINE DEPARTMENT OF LABOR, UNEMPLOYMENT INSURANCE COMMISSION.**

Supreme Judicial Court of Maine.

Argued May 10, 1988.
Decided June 8, 1988.

Andrew M. Horton, Herbert M. Friedman, Jr. (orally), Verrill & Dana, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Joyce Oreskovich, L. Louise Smith (orally), Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

The plaintiff, Outdoor World Corporation (Outdoor World), appeals from the judgment of the Superior Court, Cumberland County, affirming the decision of the Maine Unemployment Insurance Commission (Commission) which upheld an unemployment insurance tax assessment against Outdoor World. Both the Superior Court and the Commission denied tax exemptions to Outdoor World because its salespeople were neither independent contractors under 26 M.R.S.A. § 1043(11)(E) (Pamph.1987) nor real estate salespeople under 26 M.R.S.A. § 1043(11)(F)(19) (Pamph.1987). We affirm the judgment.

### I

From the evidence adduced at the hearing, the Commission rationally could find the following facts: Outdoor World owns and operates 13 campgrounds in seven states from Maine to Florida. The areas are designed to allow recretional vehicle owners to park their vehicles on a "site" for intervals of two consecutive weeks to enjoy the wooded grounds and amenities such as tennis, swimming, horseback riding and golf. A membership in any one of the campgrounds allows the member access to all the other campgrounds. Potential members are solicited initially by direct mail advertising. Interested persons call the local campground and set up an appointment for a guided tour of the campground. A member may buy either a trial or a master membership. The trial membership expires after three years. The master membership agreement is not recorded, but it can be either resold by the member (for no higher than the current price) or passed down three generations of the member's family.

In order to prepare its salespeople, Outdoor World provides one week of expense-paid sales training, either locally or at its headquarters in Bushkill, Pennsylvania. The salesperson signs an "Independent Contractors' Agreement," which states that "both parties are desirous that [X] not be treated as an employee." The duties of a salesperson consist exclusively of selling Outdoor World memberships. Once on the job the salesperson receives a draw of $175 per week for eight weeks. All earnings, however, ultimately come directly from commissions earned from the sale of membership fees (Master $6,500; Trial $3,250). Half of any commission check paid to the salesperson is used to repay the $175 draw, until the total ($1,400) has been repaid. Outdoor World provides monthly or yearly monetary sales incentives. Each salesperson is responsible for paying his own federal and state income and social security taxes.

Outdoor World's Moody Beach campground has, during the peak summer season, as many as 40 salespeople at the site to accommodate prospective members. Salespeople typically are required to be at work at 8 or 9 in the morning and are expected to give one to three tours and sales talks daily. Salespeople are assigned to certain tours by Outdoor World. The salesperson drives the potential member through the campground area in the salesperson's car. Following the tour, a large room with approximately 15 tables is provided where the salesperson attempts to sell a membership to the customer. Signed membership agreements must be reviewed and approved by Outdoor World management. Outdoor World does not require its salespeople to be licensed real estate brokers or salespersons.

As a result of an investigation conducted by the Maine Department of Labor, Unemployment Compensation Tax Division, Bureau of Employment Security, it was determined that Outdoor World was liable for unemployment insurance tax contributions for its salespeople. On appeal by Outdoor World, the Commission, after a full hearing, found, *inter alia*, that the unlicensed salespeople were employees of Outdoor World within the meaning of section 1043(11)(E), that they were not real estate salespeople within the meaning of section 1043(11)(F)(19), and affirmed the assessment of the Department of Labor. Pursuant to 5 M.R.S.A. § 11001(1) (Pamph.1987) and M.R.Civ.P. 80C, Outdoor World sought review by the Superior Court of the Commission's decision. After hearing, the trial

court affirmed the decision of the Commission, and Outdoor World appeals.

## II

Outdoor World contends that its salespeople are statutorily exempt under 26 M.R.S.A. §§ 1043(11)(E) and 1043(11)(F)(19), and therefore, the Superior Court erred in affirming the decision of the Commission assessing Outdoor World for unemployment insurance taxes.

█ When, as here, the Superior Court reviews the Commission's decision without receiving additional evidence, we also review that decision directly to determine "whether the commission correctly applied the law and whether the commission's factual findings are supported by any competent evidence." *Gerber Dental Center v. Maine Unemployment Ins. Comm'n*, 531 A.2d 1262, 1263 (Me.1987).

Section 1043(11)(E) (commonly referred to as the ABC test) provides:

Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the bureau that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The presumption declared by the definition of "employment" in this section placed on Outdoor World the burden of proving in the proceeding before the Commission that:

A) Its salespeople "ha[ve] been and will continue to be free from control or direction over the performance of such services [sale of memberships in Outdoor World resorts at a resort owned by Outdoor World], both under [their] contract[s] of service in fact; and" *also*

B) "Such service is either outside the usual course of the business [of Outdoor World] or . . . is performed outside of all the places of business of [Outdoor World]; and" *also*

C) Each salesperson "is customarily engaged in an independently established trade, occupation, profession or business."

The Commission found that Outdoor World failed to prove any one part of the tripartite test. We will not disturb this finding unless the record before the Commission compels a contrary decision. *Gerber*, 531 A.2d at 1263.

█ We first examine part B of the ABC test. The Commission correctly found that the duties of the salespeople were in the usual course of the business of Outdoor World of selling memberships to its campgrounds and that such duties were performed only on the premises of Outdoor World. The agreement between the salespeople and Outdoor World recited that Outdoor World "is in the business of developing membership campgrounds and offering the sale of such memberships to the general public." The services of the salespeople were directed exclusively to the sale of these memberships. The prospective customers made reservations to come to a campground owned by Outdoor World, where they were taken on tours by the salespeople. A customer interested in purchasing a membership was brought back to a room on the premises for the sales negotiations and signing of an agreement. The conclusion of the Commission that Outdoor World failed to satisfy part B of the ABC test is fully supported by competent evidence and was not clearly erroneous. Although the Commission found that Outdoor World also failed to satisfy parts A and C of the ABC test, because the test is conjunctive we need not review those findings.

We next address the "real estate salesman" tax exemption claimed by Outdoor World. Section 1043(11)(F)(19) provides in pertinent part:

The term "employment" shall not include:

. . . .

(19) Service performed by an individual for a person as a real estate broker [or] real estate salesman ... if all such service performed by such individual for such person is performed for remuneration solely by way of commission....

Outdoor World argues, as it did before the Commission, that because its salespeople sell real estate, and do so "solely by way of commission," it is exempted by the provisions of section 1043(11)(F)(19) from paying unemployment insurance taxes. The Commission determined that because the salespeople were not licensed as real estate brokers or salespeople under 32 M.R.S.A. § 4001(2), (3) (1978 & Pamph.1986),[1] they were not real estate brokers or real estate salespersons within the purview of section 1043(11)(F)(19).

Since there is no factual dispute as to this issue, we review the Commission's decision to determine whether it has correctly applied the applicable law. *McKenzie v. Maine Employment Sec. Comm'n*, 453 A.2d 505, 508 (Me.1982). We have repeatedly stated that "exemptions in tax statutes should be strictly construed." *Measurex Systems, Inc. v. State Tax Assessor*, 490 A.2d 1192, 1194 (Me.1985); *Connecticut Bank & Trust Co. v. City of Westbrook*, 477 A.2d 269, 271 (Me.1984); *Harold MacQuinn, Inc. v. Halperin*, 415 A.2d 818, 820 (Me.1980). We construe the exemption provided in section 1043(1)(F)(19) to apply only if the salespeople of Outdoor World in fact function as real estate brokers or salespersons. To have offered their services in connection with such a function, 32 M.R.S.A. § 4001(2) and (3) required that they be licensed.[2] The fact

that Outdoor World did not require its salespeople to have real estate licenses strongly contradicts its present claim of an exemption. Nor on the facts of this case were the salespeople of Outdoor World "selling real estate" within the context of section 1043(11)(F)(19). 33 M.R.S.A. § 589(4) (1988) defines a membership camping contract as "an agreement offered or sold within the State evidencing a purchaser's *right or license to use* the camping or outdoor recreation facilities of a membership camping operator...." (Emphasis added). A sale of a license or right to use the campground and its recreational facilities was not a "sale of real estate." *See Boothbay Harbor Condominiums, Inc. v. Dep't of Transp.*, 382 A.2d 848, 855 (Me. 1978) ("A license creates no interest in land...." (quoting *Reed v. A.C. McLoon & Co.*, 311 A.2d 548, 552 n. 7 (Me.1973))).

Accordingly, we hold that the Commission properly determined that the salespeople were employees of Outdoor World within the meaning of section 1043(11)(E) and were not real estate brokers or salespersons within the meaning of section 1043(11)(F)(19) and that the Commission properly affirmed the assessment of an unemployment insurance tax against Outdoor World.

The entry is:

Judgment affirmed.

All concurring.

---

**1.** 32 M.R.S.A. §§ 4001(2) and (3) (repealed by P.L.1987, ch. 395, § A, 174, and replaced by P.L.1987, ch. 395, § A, 212, now codified at 32 M.R.S.A. §§ 13001, 13002 (1988)) provided in pertinent part:

> (2) A "real estate broker" is any person ... who for a compensation or valuable consideration sells or offers for sale ... real estate....
>
> (3) A "real estate salesman" shall mean and include any person employed or engaged by or on behalf of a *licensed* real estate broker to

do or deal in any activity as included in subsection 2 for compensation or other valuable consideration. (Emphasis added).

**2.** 32 M.R.S.A. § 4102 (1978) (repealed by P.L. 1987, ch. 395, § A, 174, and replaced by P.L. 1987, ch. 395, § A, 212, now codified at 32 M.R.S.A. § 13003 (1988)) provided that it was unlawful for any person to act as a real estate broker or real estate salesman without a license issued by the real estate commission.