1998 ME 177

## McPHERSON TIMBERLANDS, INC.

v.

## UNEMPLOYMENT INSURANCE COMMISSION.

Supreme Judicial Court of Maine.

Argued April 9, 1998.

Decided July 17, 1998.

---

Spencer Ervin, Largay Law Offices, P.A., Bangor, William S. Wilson, Jr. (orally), Portland, for plaintiff.

William S. Wilson, Jr., Portland, for Maine Forest Products Council, Amicus Curiae.

Andrew Ketterer, Attorney General, Gwendolyn D. Thomas (orally), Pamela Waite, Asst. Attys. Gen., Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] McPherson Timberlands, Inc. appeals from the judgment of the Superior Court (Penobscot County, *Mead, J.*) affirming the Unemployment Insurance Commission's decision that timber harvesting services performed for McPherson by Albert W. Withee constituted employment pursuant to 26 M.R.S.A. § 1043(11)(E) (1988). Specifically, McPherson argues that the Commission erred in finding that Withee's timber harvesting work was neither outside the usual course of McPherson's timber management and marketing business nor performed outside all the places of that business. We affirm the judgment.

[¶ 2] McPherson is in the business of managing and marketing forest products from its own land and the land of others. It advertises its interest in buying timber from other landowners through both mailings and word of mouth. When McPherson enters into agreements with landowners, its agreements provide either that McPherson "is engaged in the business of felling and hauling timber" and "is able and willing fully to cut the specified timber on said lands and haul and deliver said timber," or that McPherson handles "the organization of the harvest and delivery of forest products to mill destinations including layout and supervision, providing the necessary men and equipment, state permiting [sic] and administrative re-

porting."[1] Although McPherson did, at one time, harvest timber with the use of its own equipment, it does not currently own the equipment necessary for timber harvesting. It therefore enters into arrangements with woodcutters who have access to this equipment for the actual harvest of timber. It then sells the harvested timber to various paper companies and sawmills, deriving as much as two-thirds of its total profit from these sales.

[¶ 3] In December 1993, McPherson contracted with a landowner to harvest timber from the landowner's Mariaville property. McPherson then entered into an agreement with Withee whereby Withee would harvest timber for McPherson from the Mariaville property. The agreement specified that Withee was to harvest only trees with a minimum diameter of six inches, that McPherson would pay Withee directly for his services, and that Withee would be responsible for all labor, material, tax, and insurance expenses associated with the harvesting operation. The agreement contained no reference to the owner of the Mariaville property.

[¶ 4] Withee's work at the Mariaville property involved inspecting trees, determining which trees met the six-inch minimum diameter specification, and cutting those trees. He provided his own skidder and chainsaw, paid his own taxes and insurance, and set his own schedule. Although McPherson did not provide Withee with any training, it did monitor his work to ensure that he complied with state law and with the landowner's goals. Withee, however, had no contact with the landowner and assumed that McPherson owned the property. Once a week, a McPherson forester would visit the property to check on Withee's progress. If the forester discovered trees that should have been cut but were not, he marked them and instructed Withee to cut them. McPherson also paid Withee directly for his work.

[¶ 5] After he completed his work at the Mariaville property, Withee filed an application for unemployment benefits, identifying McPherson as his most recent employer.

The Department of Labor, Bureau of Employment Security, Unemployment Compensation Tax Division investigated Withee's claim and determined that Withee's work for McPherson constituted employment and that McPherson was liable to the State for unemployment taxes relating to that employment. McPherson appealed that determination to the Unemployment Insurance Commission. The Commission affirmed the agency's determination twice, once after an initial evidentiary hearing and again after hearing additional evidence in response to McPherson's request for reconsideration. Following reconsideration, the Commission found that McPherson failed to prove that Withee's timber harvesting work was outside the usual course of McPherson's timber management and marketing business or that Withee's work was performed outside all of McPherson's places of business pursuant to 26 M.R.S.A. § 1043(11)(E)(2), otherwise known as part B of the ABC test. McPherson sought review of the Commission's decision in the Superior Court pursuant to 26 M.R.S.A. § 1194(8) (Supp.1997), 5 M.R.S.A. § 11001–11007 (1989), and M.R.Civ.P. 80C. The court affirmed the decision of the Commission, and this appeal followed.

[¶ 6] Where, as here, the Superior Court reviews a decision of the Commission as an intermediate appellate court, we review the Commission's decision directly. *See Gerber Dental Ctr. Corp. v. Maine Unemployment Ins. Comm'n,* 531 A.2d 1262, 1263 (Me. 1987). Our review of the Commission's decision is limited to determining whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence. *See Outdoor World Corp. v. Maine Dept. of Labor, Unemployment Ins. Comm'n,* 542 A.2d 369, 371 (Me. 1988). We will not disturb a decision of the Commission unless the record before the Commission compels a contrary result. *See id.*

[¶ 7] 26 M.R.S.A. § 1043(11)(E), otherwise known as the ABC test, provides that:

---

1. While the record contains both agreements, no evidence was produced indicating which of the two was used in the instant case.

Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the bureau that:

(1) ["A"] Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact;

(2) ["B"] Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside all of the places of business of the enterprise for which such service is performed; and

(3) ["C"] Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The putative employer bears the burden of rebutting the presumption of employment created by this provision and must meet that burden as to each of the provision's three parts. *See Gerber*, 531 A.2d at 1263. Although McPherson met its burden regarding parts A and C, it failed to convince the Commission on either of the two alternative prongs of part B of the ABC test. McPherson must therefore establish on appeal that the record before the Commission compelled it to find either that Withee's services were outside the usual course of McPherson's business or that his services were performed outside of all of the places of McPherson's business.

## I. Usual Course of Business

[¶ 8] Describing itself as a real estate and timber management company, McPherson argues that Withee's timber harvesting work was outside the usual course of its business because it does not currently own any timber harvesting equipment and thus does not engage in the business of timber harvesting. The Commission, however, was "unwilling to countenance the *specious*

*distinction* between marketing, managing and overseeing timber harvesting operations and the actual physical process of harvesting the timber." (Emphasis added). On the facts before it, the Commission found that Withee's work was not "merely incidental to" McPherson's business, but, rather, was an "integral part of" that business. Accordingly, the Commission concluded that McPherson failed to prove that Withee's services were outside the usual course of McPherson's business.

[¶ 9] McPherson asserts that the Commission's use of the phrase "integral part of" represents an error of law because it places a higher burden on the employer than is intended by the statute. To the contrary, however, the use of phrases such as "integral part of" and "merely incidental to" represents an attempt to describe the connection between the services performed and the usual course of the business being reviewed.

[¶ 10] Our decisions addressing part B of the ABC test reflect this attempt at description. In *Maine Unemployment Compensation Comm'n v. Maine Sav. Bank*, 136 Me. 136, 3 A.2d 897 (1939), a bank argued that it was not liable for unemployment taxes relating to workers hired to repair real estate owned by the bank because those workers were not engaged to perform work that was part of the bank's "usual trade, occupation, profession, or business" as required by section 19(e) of Maine's Unemployment Compensation Law (P.L.1935, ch. 192, § 19(e) (effective Dec. 18, 1936)).[2] *Id.* at 138, 3 A.2d at 898. We agreed with the bank and concluded that the repair work for which the workers were hired was "merely incidental to" and not part of the bank's usual business. *Id.* at 141, 3 A.2d at 899.

[¶ 11] A year later, relying on the "merely incidental to" language of the *Maine Savings* decision, an owner of two tenement houses argued that he was not liable for

---

2. This language from section 19(e), which defines "employing unit" in the context of Maine's Unemployment Compensation Law, has remained the same through R.S. ch. 24, § 19 (1944) and R.S. ch. 29, § 3 (1954), and is now codified at 26 M.R.S.A. § 1043(10) (1988).

The similar language of the ABC test, which defines "employment" in the context of Maine's Unemployment Compensation Law, was also first enacted in P.L.1935, ch. 192, § 19(g)(6), has also remained the same through the 1944 and 1954 Revisions, and is now codified at 26 M.R.S.A. § 1043(11)(E).

unemployment taxes relating to workers he hired to maintain and repair his tenement buildings because the maintenance and repair work was merely incidental to his business as an owner of real estate. *See Maine Unemployment Compensation Comm'n v. Androscoggin Junior, Inc.*, 137 Me. 154, 164, 16 A.2d 252, 258 (1940). In contrast to the work at issue in *Maine Savings*, however, the repair and maintenance work at issue in *Androscoggin Junior* was determined to be "part of [the employer's] usual business" and not merely incidental to it. *Id.*

[¶ 12] Two more recent opinions addressing part B of the ABC test demonstrate the need for the Commission to look carefully at the individual facts of each case to determine whether the work at issue is outside the usual course the employer's business. Neither opinion uses the phrases "integral part of" or "merely incidental to," relying instead on other phrases to describe the connection between the services rendered and the business of the putative employer. In *Gerber Dental Ctr. Corp. v. Maine Unemployment Ins. Comm'n*, 531 A.2d at 1262, the owner and operator of dental centers argued that it was not responsible for unemployment taxes relating to the dentists it hired to provide dental services to patients at its centers. *See id.* We affirmed the Commission's decision that the dentists' work was not outside the usual course of Gerber's business where, *inter alia*, Gerber publicly advertised itself as a provider of dental services, employed all the administrative support staff necessary to handle appointments, billing, and collections, and derived its sole income from the patients' payments for dental services. *See id.* at 1264. In *Gerber*, we determined that the "*nature of Gerber's operation*," that is, the provision of "full range" dental services, supported the Commission's finding that the services provided by the dentists were not outside the usual course of Gerber's business. *Id.* (emphasis added).

[¶ 13] Similarly, in *Outdoor World Corp. v. Department of Labor, Maine Unemployment Ins. Comm'n*, 542 A.2d at 369, the owner and operator of campgrounds from Maine to Florida argued that it was not responsible for unemployment taxes relating to the salespeople it hired to sell memberships to its campgrounds. *See id.* at 370–71. We affirmed the Commission's decision that the salespeoples' work was not outside the usual course of Outdoor World's business where, *inter alia*, the agreement between Outdoor World and its salespeople provided that Outdoor World was in "the business of developing membership campgrounds and offering the sale of such memberships to the general public[,]" and the salespeoples' work was "*directed exclusively*" towards the sale of such memberships. *Id.* at 371 (emphasis added).

[¶ 14] Here, regardless of the descriptive language chosen, there is competent evidence in the record to support the Commission's conclusion that Withee's timber harvesting work was not outside the usual course of McPherson's timber management and marketing business. McPherson's business encompassed locating, obtaining, and selling timber at a profit. McPherson advertised its interest in buying timber from other landowners and held itself out as a harvester and marketer of the timber. McPherson was then involved with the harvesting both before and after the felling of the trees. Withee's activities were directed solely at assisting McPherson in obtaining the timber. McPherson set specifications for Withee's work and oversaw that work to ensure that the specifications were met. It was McPherson, and not the landowner, who paid Withee for his work. Withee had no contact with the landowner and assumed that McPherson owned the property. Finally, McPherson sold the timber Withee harvested to various paper companies and sawmills, deriving a significant portion of its profit from those sales.

[¶ 15] Although many different business relationship may be formed in the course of harvesting and selling timber, the evidence in this record does not compel a result contrary to the Commission's conclusion that Withee's work was not outside the usual course of McPherson's business pursuant to section 1043(11)(E)(2).

## II. Place of Business

■ [¶ 16] McPherson next argues that the Mariaville property where Withee har-

vested timber was not a place of its timber management and marketing business because the property was not its home office. The Commission, however, determined that Withee's work occurred within McPherson's "business territory" and was therefore not performed outside all the places of McPherson's business.

 [¶ 17] We reject McPherson's argument that an employer's place of business is limited to the location of its home or central office. If the employer has a significant and business-related presence at the location in dispute, it may be found to have a place of business there. *See Clayton v. State*, 598 P.2d 84, 86 (Alaska 1979) (construing state statute identical to section 1043(11)(E)(2)); *Miller v. Washington State Emp. Sec. Dept.*, 3 Wash.App. 503, 476 P.2d 138, 140–41 (1970) (same).[3] In construing a statute identical to section 1043(11)(E)(2), the Vermont Supreme Court concluded that the phrase "places of business" includes not only a business's home office or headquarters but also the business territory in which the business operates. *See in re Bargain Busters, Inc.*, 130 Vt. 112, 287 A.2d 554, 558–59 (1972).

[¶ 18] The record here does not compel a result contrary to the Commission's conclusion that Withee's work was not performed outside all of the places of McPherson's business. McPherson contracted directly with the landowner to harvest timber from the Mariaville property and had representatives on the property during the harvesting to assure compliance with that contract. Its contractual relationship with the landowner, its interest in the timber on the property, and its physical presence on the property support the Commission's conclusion that, while Withee was harvesting timber at the Mariaville property, the property was within McPherson's business territory and was

therefore a place of McPherson's business pursuant to section 1043(11)(E)(2).

The entry is:

Judgment affirmed.

---

**3.** Both *Clayton* and *Miller* involved factual scenarios compellingly similar to the facts of this case. In *Clayton*, a lumbermill proprietor received a lease to harvest timber from state-owned land and then engaged a number of woodsman to harvest the timber and deliver it to his mill. *See Clayton*, 598 P.2d at 85. In *Miller*, a logging contractor entered into a contract to harvest timber from a parcel of land, engaged a couple of woodsman to fell and buck the timber, and then had his own logging crew yard and load the timber. *See Miller*, 476 P.2d at 139. In each case, the court found that the logging site was clearly a "place of business" of the putative employer pursuant to a state statute identical to section 1043(11)(E)(2). *See id.* at 140–41; *Clayton*, 598 P.2d at 86.