STATE OF MAINE
CUMBERLAND, SS


ᴄʟᴇʀᴋ'ꜱ ᴏꜰꜰɪᴄᴇ

ᴌᴜᴊ ᴀᴜᴳ ᴵ6  ᴘ 2: 38

SUPERIOR COURT
Civil Action
Docket No. AP-06-06

ROBERT JOHNSON,

Petitioner

v.

MAINE UNEMPLOYMENT INSURANCE
COMMISSION and
MAINE STANDARDS, LLC,

Respondents

**DECISION AND JUDGMENT**
(M.R.Civ.P. 80C)

## I. BEFORE THE COURT

This matter comes before the court on petitioner Robert Johnson's (Johnson) Rule 80C appeal from a decision of the Maine Unemployment Insurance Commission (Commission) to deny him unemployment benefits on the ground that he was discharged from his employment with Maine Standards Company (Maine Standards) for misconduct pursuant to 26 M.R.S.A. § 1193(2).

## II. PROCEDURAL HISTORY AND BACKGROUND

Robert Johnson worked as a chemist for Maine Standards from 2004[1] until May 2006. Prior to his employment at Maine Standards, Johnson was employed for almost ten years in a similar position at Casco Standards, which was owned by Thomas Happe, the current president of Maine Standards. Maine Standards creates chemical solutions that are used to ensure the performance of medical testing equipment, and is subject to extensive regulation and inspection by federal and international agencies.

---

[1] There is some discrepancy in the record as to Johnson's start date with Maine Standards. The parties' briefs and the Commission's decision refer to August 2004 as the date Johnson began employment, but the initial application for unemployment benefits lists January 2004 as the start date.

During the course of his employment, Johnson was involved in four specific incidents that eventually culminated in his dismissal. The first involved Johnson's failure to label chemicals that he left unattended in the laboratory at Maine Standards, which was contrary to company policy and FDA regulation. Christine Beech, the Director of Quality Assurance and Regulatory Affairs, noticed Johnson's error and called it to his attention. Johnson then placed an improper label on the chemicals until the next day, when he created the correct label for them.

The second incident occurred during the course of contract negotiations between Maine Standards and another company, Roche Diagnostics. Maine Standards was anticipating $3,000,000 to $4,000,000 in business from its dealings with Roche, but ended up losing the opportunity. This loss was at least partially attributable to an unauthorized study in which Johnson and another employee participated where they failed to use the proper equipment to measure liquids used in the products they were creating for Roche, and instead used equipment that created less accurate results. When the problem was discovered, Johnson admitted that he had been involved and produced documentation of the study, but claimed that the other employee had agreed to inform management of their work. Johnson believed that the other employee had done so, when in fact he had not. As a result of this incident, Johnson lost a recent promotion and suffered a 10% salary reduction for 3 months. The other employee was dismissed.

The third incident involved Johnson's use of the wrong batch of chemicals to create products that were sent to a local hospital for testing. Johnson admitted that he had taken chemicals that were "quarantined" from the freezer, and had failed to verify that he was using the correct substance. As a result, the incorrect solution was sent several times to the hospital and inaccurate test results were obtained. After Johnson

2

informed management of his mistake, he was demoted. Johnson recognized the seriousness of his actions by acknowledging that he was grateful he was still employed after the incident.

The final incident resulting in Johnson's termination involved his failure to produce a safety log that was used to verify that all employees had read and understood the safety manual at Maine Standards. As safety coordinator, it was Johnson's responsibility to ensure that the safety log existed in order to satisfy regulatory requirements in the event of an audit. While Maine Standards was preparing for an upcoming audit, Johnson was asked for the safety log and was given four hours to produce it. When he was unable to do so and could not give any explanation for the missing log, he was terminated from employment.

Johnson applied for unemployment benefits and was initially denied by the deputy, who found that he had been discharged for misconduct. Johnson then appealed the deputy's decision to the Division of Administrative Hearings and was afforded a hearing. The Administrative Hearing Officer reversed the decision of the deputy, holding that Johnson was not discharged for misconduct and was therefore entitled to benefits. Maine Standards then appealed that decision to the Commission, which reversed the decision of the Administrative Hearing Officer and decided that Johnson had in fact been discharged for misconduct. Johnson then appealed to this court.

## III. DISCUSSION

### A. Standard of Review.

The court may only reverse or modify an administrative agency's decision if it is based upon "bias or error of law," is "unsupported by substantial evidence on the whole record," is "arbitrary and capricious," or involves an "abuse of discretion" by the

3

agency. 5 M.R.S. § 11007(4)(C)(4)-(6) (2006). The power of this court to review decisions of the Commission is confined to an examination of "whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, 1998 ME 177,¶ 6, 714 A.2d 818, 820. Additionally, the court cannot "substitute its judgment for that of the agency on questions of fact." 5 M.R.S. § 11007(3) (2006). "[U]nless the record before the Commission compels a contrary result," the court will uphold the agency decision. *McPherson*, 1998 ME 177, ¶ 6, 714 A.2d at 820. Finally, "the burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982).

**B. Misconduct.**

An employee may be disqualified from receiving unemployment benefits if "misconduct" is the reason for dismissal. 26 M.R.S. § 1193(2) (2006). Under the statute, misconduct is defined as "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." *Id.* at § 1043(23). Acts that amount to an "unreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of employment" create a presumption of such disregard. *Id.* at § 1043(23)(A)(3). However, a finding of misconduct cannot be "solely" based on "an isolated error in judgment or a failure to perform satisfactorily when the employee has made a good faith effort to perform the duties assigned." *Id.* at § 1043(23)(B)(1).

To determine whether an employee's actions amount to a disregard for a material interest of an employer, the Commission is expected to consider the employee's behavior as an "objective manifestation of intent." *Sheink v. Maine Dept. of Manpower Affairs*, 423 A.2d 519, 522 (Me. 1980). An employee's subjective intent is

4

irrelevant. *Id.* Furthermore, the court will not reverse a finding of misconduct "if the Commission justifiably determines that the employee's conduct was of a type, degree, or frequency that was so violative of employer interests that it may reasonably be deemed tantamount to an intentional disregard of those interests." *Id.*

Although violation of company policy does not necessarily amount to a finding of misconduct, a violation can be misconduct if "(1) the employer [has] a reasonable standard for discharge and (2) the employee [has] acted unreasonably in failing to meet that standard." *Forbes-Lilley v. Maine Unemployment Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994). According to the Law Court, "the statute sets a rule of reason, to be objectively applied based on the totality of the circumstances." *Moore v. Maine Dept. of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978).

## C. Reasonableness.

The Commission concluded that Johnson's failure to adequately perform his duties in each of the four incidents at Maine Standards amounted to a "pattern of irresponsible behavior" under 26 M.R.S. § 1043(23)(A) (2006), and was therefore properly considered misconduct. Additionally, the Commission found that the presumption of § 1043(23)(A)(3) applied because of the precision and care necessary to the work of Maine Standards. Although Johnson characterizes the incidents as "a few lapses in attention to detail," that were a result of Johnson's heavy workload, the Commission noted that Johnson had never informed his employer of the difficulty that he was experiencing in fulfilling his employment requirements.

Johnson also argues that the Legislature did not intend misconduct to be defined as mere negligence, and points to the good faith exception of § 1043(23)(B)(1) to demonstrate this interpretation. Johnson asserts that the Commission failed to engage in a good-faith analysis under § 1043(23)(B)(1), which forbids basing a finding of

5

misconduct solely on "an isolated error in judgment or a failure to perform satisfactorily when the employee has made a good faith effort to perform." This subsection might have been applicable if the Commission had not determined that the presumption of § 1043(23)(A) applied. To require a good-faith analysis of behavior amounting to a presumption of misconduct would render the presumption useless. In any event, as the Commission concluded, the behavior by Johnson was not an isolated occurrence, but a pattern of neglect in a business that requires precision, which cost Maine Standards a valuable contract and repeatedly subjected it to liability. For these reasons, the Commission did not err when it determined that Johnson was discharged for misconduct.

Finally, Johnson argues that the requirements of his position were such that he experienced difficulty in meeting his employer's demands, and that these "few lapses in attention to detail" do not equate to misconduct. However, in each incident, the expectations of the employer were clear and reasonable. Due to the nature of this highly regulated business that requires preciseness and accuracy, it was not unreasonable for Maine Standards to expect that standard operating procedures would be followed to ensure accuracy and quality control in the manufacture of their products. As a trained chemist who had performed this type of work for over ten years, including his prior employment at Casco Standards, Johnson was expected to be aware of the safety and regulatory requirements that existed. As safety coordinator, Johnson understood that he was required to maintain a current safety log. In each instance, Johnson failed to carry out his duties with the care and attention required in his position. Therefore, the evidence before the Commission was more than adequate to support its finding that Johnson was not entitled to unemployment benefits because he was discharged for misconduct.

## IV. DECISION AND JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

A. The record is sufficient to support the Commission's finding of misconduct.

B. The decision of the Commission to deny benefits to the petitioner is affirmed.

SO ORDERED.

Dated: February 26, 2008

Thomas E. Delahanty II
Justice, Superior Court

7

Date Filed 11-21-06     CUMBERLAND     Docket No. AP-06-60

County

Action 80C

ROBERT JOHNSON

MAINE UNEMPLOYMENT INSURANCE COMMISSION
MAINE STANDARD CO.

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| WILLIAM NUGENT ESQ<br>PO BOX 4811<br>PORTLAND ME 04112<br>828-0035 | Elizabeth Wyman AAG<br>6 State House Station<br>Augusta ME 04333<br><br>Barbara Goodwin Esq<br>PO BOX 9785<br>Portland ME 04112 |

Date of
Entry