STATE OF MAINE
CUMBERLAND, ss



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-08-26

VILLAGE BUILDERS, INC.,
              Petitioner

ORDER ON
v.                                                              80C APPEAL

UNEMPLOYMENT INSURANCE
COMMISSION,
              Respondent

Before the Court is Petitioner Village Builders, Inc.'s appeal of final agency action pursuant to the Maine Administrative Procedures Act, 5 M.R.S. §§ 11001-11008 (2008) and M.R. Civ. P. 80C.

## PROCEDURAL HISTORY

The Bureau of Unemployment Compensation ("Bureau") initiated a field investigation against Petitioner Village Builders, Inc. (hereinafter "Petitioner" or "Village Builders") in early 2007. The Bureau determined that the services provided for or in connection with the business of employing a carpenter, Frank Herrick ("Herrick"), constituted employment within the meaning of the Employment Security Law, 26 M.R.S. § 1043(11) (2008). Village Builders appealed this decision to the Unemployment Insurance Commission ("Commission"). After a testimonial hearing, the Commission held that Village Builders failed to rebut the statutory presumption of employment for Herrick's services. Village Builders subsequently filed this appeal.

## FACTUAL BACKGROUND

Village Builders is a general contracting construction business. The owner, Daniel Grant ("Grant"), is the only regular employee on the company's payroll. After Village Builders receives a contract for a project, it contracts with tradesmen to perform the construction work (e.g. excavators, carpenters, electricians, plumbers, roofers, etc.).

These subcontractors usually provide their own tools and equipment for the project. The company does not perform any of the actual work itself. Rather, Village Builders generally pays the subcontractors for their work on the project on either an hourly basis or fixed price basis.

In 2005, Village Builders entered into a contract with Eider Investments for a renovation project at the Black Point Inn in Scarborough, Maine ("Inn Project"). Eider Investments itself had a contract to renovate the Black Point Inn and hired Village Builders as a subcontractor on the Inn Project. Acting in its usual manner, Village Builders contacted Herrick to perform carpentry services at the Inn Project.[1] Village Builders agreed to pay Herrick an hourly rate of $25 per hour.[2] Herrick submitted a weekly invoice to Village Builders. Village Builders then transmitted this invoice to Eider Investments, who in turn paid Herrick directly. During 2006, Village Builders paid Herrick $55,000 for his services.[3]

When Village Builders hired Herrick, he purportedly owned a business entitled "Herrick's Carpentry." R. at 78. Herrick carried business cards for "Herrick's Carpentry."[4] A witness[5] testified before the Commission that Herrick held himself out to the public as a carpenter with his own business.[6] There was also uncontroverted

---

[1] Village Builders hired Herrick on at least one other job before the Inn Project.

[2] An executed contract between Village Builders and Herrick is not included in the record and it was not presented to the Commission. R. at 81-83. Grant did, however, present the Comission with a blank contract form that he typically used for carpenters. R. at 50. Grant testified that the contract form included in the record was not required for all subcontractors. Grant also testified that if Herrick would not sign "this" contract he would not have hired him for the Inn Project. *Id.* The Commission did not rely on the specific provisions of the contract in making its decision that Herrick's services constituted employment under the statute. *See* R. at 1-5. There is ample testimonial evidence in the record that describes Village Builders and Herrick's relationship and Village Builders' business generally. Therefore, the Court decides this case without reliance on the unexecuted contract.

[3] There is no evidence in the record reflecting that Herrick did or did not earn other income in 2006.

[4] Herrick failed to appear before the Commission, despite the issuance of a subpoena.

[5] This witness was another carpenter who worked for Village Builders on the Inn Project.

[6] This same witness testified that he worked for Herrick in 2005. However, the relevant time period for this appeal is the commencement of the Inn Project in 2006. Therefore, Herrick's dealings prior to this time are irrelevant to the Court's review.

testimony from Grant that Herrick worked on at least one other construction project while he was working on the Inn Project. R. at 41.

During the course of the Inn Project, Herrick's work hours varied to fit his own schedule. He determined his day-to-day activities at the job site, but he was obligated to perform his duties in order to meet periodic and overall project goals. Eider Investments, not Village Builders, paid for and provided the materials for the Inn Project. While working at the Inn Project, Herrick agreed to maintain workers' compensation and health and general liability insurance.

The owner of Eider Investments, Larry Wagner, oversaw and directed most of the daily operations at the Inn Project. However, Grant would visit the work site once or twice a week to review progress. If there were problems with the work on the project, an Eider Investments representative would address them directly with the worker in issue. If the worker failed to rectify the problem, however, Eider Investments would inform Village Builders, which would address the problem with the worker and, if necessary, terminate that worker.

Village Builders terminated Herrick in February 2007 when he was unable to show proof that he maintained general liability insurance.[7] Thereafter, Herrick filed a claim for unemployment benefits, which triggered an investigation by the Bureau's field advisor and investigator.

## DISCUSSION

### I. Standard of Review

When the Superior Court reviews a final decision of the Unemployment Insurance Commission pursuant to M.R. Civ. P. 80C it reviews the decision to determine "whether there exists any competent evidence to support the agency findings

---

[7] Other carpentry subcontractors, hired by Village Builders, completed the carpentry work on the Inn Project.

3

and then ascertain whether upon those findings the applicable law has been correctly applied." *Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 8, 895 A.2d 965, 969. The Court "will not overrule findings of fact supported by competent evidence, and where the [petitioner] is the party with the burden of proof before the Commission, we will not disturb a decision of the Commission on issues of fact, unless the record before the Commission compels a contrary result." *Id.* The Commission's findings of fact may be reversed on appeal if the Court finds that they are unsupported by substantial evidence on the whole record. 5 M.R.S. § 11007(4)(C)(5) (2008).

## II. Employment Security Law-the ABC Test

The Employment Security Law expansively defines "employment" as "[s]ervices performed by an individual for remuneration." 26 M.R.S. § 1043(11)(E). If a putative employer cannot rebut the statutory presumption of employment, it can be liable for unemployment taxes. *See* 26 M.R.S. § 1221. The Employment Security Law provides that:[8]

> Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the bureau that:
>
> > 1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact;
> >
> > 2) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
> >
> > 3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

---

[8] The statute also grants numerous exceptions to the term "employment," but no specific exception applies to this case. *See* 26 M.R.S. § 1043(11)(F)(1)-(44).

4

*Id.* § 1043(11)(E)(1)-(3). This three-prong test is commonly referred to as the "ABC Test."[9] This test is conjunctive and Village Builders must satisfy all three prongs in order to meet its burden of proof that Herrick was an independent contractor and not its employee. *Allied Resources for Correctional Health v. Maine Unemployment Ins. Comm'n,* 680 A.2d 456, 458 (Me. 1996). Each determination requires an intensive fact-based analysis. *See McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n,* 1998 ME 177, ¶ 12, 714 A.2d 818, 822.

The Petitioner must attack the evidence that the Commission considered on each prong of the ABC Test. The Court considers the prong that was supported by the strongest evidence first, rather than mechanically discussing each prong in order. The Court finds that the Commission had before it the most compelling evidence against a finding in favor of Petitioner on prong B of the ABC Test (Usual Course of Business or Place of Business).

## III.   Usual Course of Business or Place of Business

Prong B of the ABC Test presents alternatives for a putative employer. In the first alternative, Village Builders must demonstrate that the Commission did not have before it any competent evidence to conclude that the service performed by Herrick was not outside Village Builders' usual course of business. In the second alternative, Village Builders must demonstrate that the Commission did not have before it any competent evidence to conclude that Herrick's work at the Inn Project was not performed outside of Village Builders' place of business.

### A.   Service Outside the Course of Business

---

[9] Petitioner acknowledges that the Commission applied the proper test, namely the ABC Test, in reaching its decision. He contends, however, that substantial evidence does not exist in the record to support the Commission's decision and that the Commission misapplied the law to the facts of this case.

Petitioner argues that Herrick's services were outside the usual course of business for Village Builders because Village Builders is "essentially a broker of services between the owner and the independent tradesman." Pet.'s Br. at 15 (emphasis in original). Petitioner argues that Herrick's work was outside the usual course of business for Village Builders because Village Builders is in the business of bringing clients and tradesmen together; it is not in the business of carpentry or in the business of construction generally. The Commission argues that the record does not support this contention and that Village Builders' oversight of the Inn Project inherently contradicts this proposition.

With respect to this first alternative, the Court may consider whether the services are a part of the putative employer's business or merely incidental to its operations, but it need not limit its inquiry to this dichotomy. See McPherson, 1998 ME 177, ¶ 2, 714 A.2d at 821 (discussing cases that make the incidental versus integral distinction and those cases that simply looked at the nature of the business relationship). Village Builders' business is general contracting for construction projects. Although Village Builders does not perform construction services itself, Grant testified that "if there were no people in building trades, we would not have a business." R. at 42. Village Builders cannot reasonably detach itself from the workers who provide the necessary services for its business to survive.

Even if the Court were to accept Village Builders' argument that it is merely a broker, this could only be true at the inception of the relationship between the clients and tradesmen because the facts of this case preclude such a holding beyond that time. Village Builders did not simply connect Herrick and Eider Investments and then remove itself from the relationship; rather, Village Builders was involved with the Inn Project from start to finish. Village Builders channeled Herrick's payment invoices for

6

his hourly wage to Eider Investments. Grant made weekly, and at times biweekly, visits to the Black Point Inn. Village Builders had an interest in the quality of the work provided by the tradesmen at the Inn Project, an in Herrick's work in particular. Furthermore, it had an interest in the successful completion of the entire project.

With that said, the Commission had before it competent evidence that Village Builders could not meet this first alternative under prong B of the ABC Test. With this evidence, the Commission correctly held that Village Builders could not rebut the first presumption in section 1043(11)(E)(2).

## B.     Place of Business

In the alternative, Petitioner argues that although it has a presence at each construction site, including the Inn Project, its presence is temporary. To hold that such temporary projects are places of business, Petitioner argues, would not serve the purposes of the Employment Security Act. In opposition, the Commission argues that construction sites are necessarily "places of business" for Village Builders-a business engaged in contracting for construction services.

A place of business is not limited to a home office. "If the employer has a significant and business-related presence at the location in dispute, it may be found to have a place of business there." *McPherson*, 1998 ME 177, ¶ 16, 714 A.2d at 823. In fact, individual job sites or places of installation can be a place of business. For instance, in *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, the putative employer cut and removed trees from land not owed by the employer.[10] 1998 ME 177, ¶ 2, 714 A.2d 818, 819. The putative employer in *McPherson* then contracted with a worker to have that individual perform work on a landowner's property. *Id.* ¶ 3, 714 A.2d at 820. The

---

[10] The employer in *McPherson* also managed and marketed wood products on its own land. 1998 ME 177, ¶ 2, 714 A.2d at 819.

agreement specified the size of the trees to be harvested, the payment for services, and that the worker was responsible for all labor, material, tax, and insurance expenses associated with the project. *Id.* ¶ 4, 714 A.2d at 820. A McPherson representative checked in on this worker once a week. *Id.* The Law Court agreed with the Commission's conclusion. *Id.* ¶ 14, 714 A.2d at 823. Even though the worker performed the services on independently owned property, the forestry project on private lands "occurred within McPherson's 'business territory' and was therefore not performed outside all the places of McPherson's business." *Id.*

A putative employer's place of business can also be where an employer sends its workers. *Worldwide Language Res. v. Me. Unemployment Ins. Comm'n*, CUMSC- AP-06-53 (Me. Super. Ct. Cum. Cty., Mar. 23, 2007) (Delahanty, J.) ("The services the translator provided are exactly the type of services Worldwide is in the business of facilitating and they are provided where the clients wish to have them provided. Worldwide's place of business is not the world as a whole, but the specific places in the world where it sends its linguists and provides support through its site managers.").

In contrast, in *Alley v. Maine Unemployment Ins. Comm'n*, the court held that incidental referrals of court reporters were not considered as employment under the Employment Security Law. KENSC-AP-04-14 (Me. Super. Ct. Ken. Cty., Apr. 20, 2005) (Marden, J.). The *Alley* court held that the putative employer did not have "any business-related presence and was not physically present at the job site." *Id.* Additionally, the putative employer did not have a contract with the clients, nor did it review any of the court reporters' work, despite the fact that it had an interest in the quality of the work. *Id.*

The record here does not compel a result contrary to the Commission's conclusion that Herrick's work was not performed outside all of the places of Village

8

Builders' business. The Commission had before it competent evidence that Village Builders was involved in coordinating the renovation and construction work at the Black Point Inn. Although Village Builders did not contract directly with the Black Point Inn, as did the employer in *McPherson*, it did have representatives at the Inn Project at least once or twice a week to assure the timely completion of the project. Like the worker in *Worldwide*, the Herrick's carpentry services are exactly the types of construction services that Village Builders generally provides to its clients. Village Builders' interest in the completion of the Inn Project and its physical presence on the property provide competent evidence that supports the Commission's conclusion that the property was within Village Builders' business territory and was therefore a place of Village Builders' business pursuant to section 1043(11)(E)(2).

## CONCLUSION

A putative employer must meet all three prongs of the ABC Test in order to avoid the statutory presumption of "employment" and the corresponding liability for unemployment compensation contributions. *See* 26 M.R.S. § 1043(11)(E)(1)-(3), 26 M.R.S. § 1221. Village Builders has not met its burden. The Commission had competent evidence before it when it held that Herrick's carpentry services were in Village Builders' usual course of business or, in the alternative, that Village Builders had a place of business at Black Point Inn for the duration of the renovation project.


Therefore, the entry is:

> The decision of the Maine Department of Labor Unemployment Insurance Commission is AFFIRMED.

> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

9

Dated at Portland, Maine this ___16th___ day of ___March___, 2009.

Robert E. Crowley
Justice, Superior Court

Date Filed __Aug. 13, 2008__ __CUMBERLAND__ Docket No. __AP-08-26__
County

Action ___80C APPEAL___

VILLAGE BUILDERS, INC.

MAINE DEPARTMENT OF LABOR
UNEMPLOYMENT INSURANCE COMMISSION

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| MARK FRANCO ESQ<br>THOMPSON & BOWIE<br>PO BOX 4630<br>PORTLAND ME 04112-4630<br>774-2500 | ELIZABETH WYMAN AAG<br>6 STATE HOUSE STATION<br>AUGUSTA ME 04333 |