**Emmett J. MURPHY**

v.

**BOARD OF ENVIRONMENTAL PROTECTION.**

Supreme Judicial Court of Maine.

Argued Sept. 30, 1992.
Decided Oct. 26, 1992.

---

**3.** *See supra* note 1.

Michael E. Carpenter, Atty. Gen., Margaret McCloskey (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Robert J. Crawford (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Beth Ahearn, Maine Audubon Society, Falmouth, amicus curiae.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

The Board of Environmental Protection appeals from a judgment of the Superior Court (Kennebec County, *Chandler, J.*) re-

versing the Board's decision to deny Emmett J. Murphy a permit to rebuild his summer cottage in Wells. On appeal, the Board contends that the court erred in concluding that (1) the Board improperly processed the permit application by applying the incorrect statutory standards and (2) the Board failed to enumerate sufficient findings so as to allow judicial review of its decision. Murphy cross-appeals the court's denial of his motion to include, as part of the administrative record, the transcript of the Board's deliberation. Because we find that the Superior Court did err in concluding that the Board misapplied the statutory criteria, we vacate the judgment.

During the summer of 1988, Emmett J. Murphy began to renovate his summer cottage located on a parcel of land which is completely surrounded by the Rachel Carson National Wildlife Refuge and is adjacent to coastal wetlands. Subsequently, the Department of Environmental Protection (the "DEP"), received a complaint that the construction activity was causing erosion and sedimentation in the adjacent coastal wetland. As a result, the DEP, in December of 1988, advised Murphy's contractor that the project required a permit under the Natural Resources Protection Act ("NRPA"), specifically, 38 M.R.S.A. § 480–C (1989 & Supp.1991). Murphy then applied for the permit in January of 1989.

The DEP denied Murphy's permit application on the grounds that the construction (1) will unreasonably interfere with existing scenic and aesthetic uses; (2) has caused and will continue to cause unreasonable erosion of sediment or soil; (3) has unreasonably harmed and will continue to harm significant wildlife habitat, travel corridors, estuarine or marine fisheries or other aquatic life; (4) has violated and will continue to violate State water quality laws; and (5) will unreasonably cause or increase the flooding of the adjacent properties. Thereafter, Murphy unsuccessfully appealed the decision of the DEP to the Board of Environmental Protection (the "Board").

Murphy sought review by the Superior Court contending that the Board erroneously applied certain statutory criteria to his permit application and that the Board failed to enumerate sufficient findings of fact to enable Murphy to adequately determine the reasons for the decision or to allow an appropriate court to properly review the denial.[1] Murphy also filed a Motion to Admit Additional Evidence into the Record pursuant to M.R.Civ.P. 80C(e) & (f). Specifically, Murphy sought the admission of a partial transcript of the Board's deliberations. His motion was denied.

The Superior Court granted Murphy's appeal and remanded the case to the Board concluding (1) that the Board had improperly processed Murphy's permit application by erroneously applying all eight of the statutory standards then contained in 38 M.R.S.A. § 480–D,[2] (2) that the Board should have limited its review to whether the proposed construction activity would adversely impact upon the wetlands by causing an unreasonable amount of soil erosion, and (3) that the Board failed to sufficiently articulate its findings so as to properly permit judicial review of its decision. The Board filed a timely appeal. Murphy cross-appeals seeking reversal of the order denying his motion to include the transcript of the Board's deliberations as part of the administrative record.

## I.

■ It is undisputed that Murphy was required to obtain a permit pursuant to 38 M.R.S.A. § 480–C(1)(B) (Supp.1991).[3] The

---

**1.** In a separate allegation, Murphy challenged the denial as an unconstitutional taking of his property under Article I, Section 21 of the Maine Constitution and under the fourteenth amendment of the United States Constitution. By mutual consent of the parties and Order of the Superior Court dated May 3, 1991, the claims were bifurcated and the taking claim stayed pending final resolution of the administrative issues.

**2.** At the time of Murphy's application, § 480–D set forth eight standards. The statute has since been amended and now contains a ninth standard. *See* 38 M.R.S.A. § 480–D(9) (Supp.1991).

**3.** 38 M.R.S.A. § 480–C(1)(B) (Supp.1991) provides in pertinent part:

crucial issue before us is whether the Board erred in its determination that all the criteria set forth in section 480–D [4] must be considered and applied as part of the application process. Resolution of this issue is a matter of statutory construction of the interplay between sections 480–C and 480–D.

■■■ In general, the starting point in interpreting a statute is the statutory language itself. *Perry v. Hartford Acc. and Indem. Co.*, 481 A.2d 133, 138 (Me.1984). Unless the statute itself reveals a contrary legislative intent, the plain meaning of the language will control its interpretation. *Keene v. Fairchild Co.*, 593 A.2d 655, 657 (1991). To that end, the particular words used in the statute must be given their plain, common and ordinary meaning. *Phelps v. President and Trustees of Colby College*, 595 A.2d 403, 405 (1991). Application of the plain meaning rule in the present case supports the Board's contention that once a particular activity falls within the purview of § 480–C the applicant must then demonstrate that the activity complies with all of the standards set forth in § 480–D.

Careful scrutiny of both the structure and plain meaning of sections 480–C and 480–D reveals a clear delineation in the two steps involved in the permit application process. The first step requires an initial determination of whether a particular activity is subject to the jurisdiction of the NRPA under § 480–C. *See* 38 M.R.S.A. § 480–C (1989 & Supp.1991). Once it is determined that the NRPA applies, the focus then shifts to the second step, set forth in a separate and independent section, entitled "Standards," and the applicant must demonstrate that the proposed activity complies with certain conditions in order to obtain a permit. *See* § 480–D. It is significant that the statute was drafted to include the plural form and that no limits were placed on the applicability of any of the standards to activities occurring adjacent to coastal wetlands, the very activity at issue in the present case. The Legislature was certainly capable of placing limitations on the licensing standards when it so intended. Such limitations were, in fact, placed on the application of standards 7, 8 and 9. For example, standard number 7 is prefaced with the limiting language, "If the activity is on or adjacent to a sand dune,...." Similar limiting language is contained in standards 8 and 9. *See* 38 M.R.S.A. § 480–D(7)–(9) (1989 & Supp.1991).[5] The absence of any limiting language regarding activi-

---

**1. Prohibition.** No person may perform or cause to be performed any activity listed in subsection 2 without first obtaining a permit from the department or in violation of the conditions of a permit, if these activities: ...

    **B.** Are on land adjacent to any freshwater or coastal wetland, great pond, river, stream or brook and operate in such a manner that material or soil may be washed into them.

4. 38 M.R.S.A. § 480–D (1989 & Supp.1991) provides in pertinent part:

    The department shall grant a permit upon proper application and upon such terms as it considers necessary to fulfill the purposes of this article. The department shall grant a permit when it finds that the applicant has demonstrated that the proposed activity meets the following standards.

    The statute then sets forth the appropriate standards. In general, at the time of Murphy's application, they provided that the proposed activity must not:

    1. unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses;

    2. unreasonably cause an erosion of soil or sediment;

    3. unreasonably harm significant wildlife habitat, aquatic habitat, freshwater wetland plant habitat, travel corridor or fisheries;

    4. unreasonably interfere with the natural flow of waters;

    5. violate State water quality laws;

    6. increase flooding;

    7. if the activity is on or adjacent to a sand dune, no unreasonable interference with the natural supply or movement of sand; and

    8. if the activity is a crossing of any outstanding river segment, as defined, no reasonable alternative may exist.

5. Standard 8 applies only "[i]f the proposed activity is a crossing of any outstanding river segment...." Standard 9 is applicable only "[i]f the proposed activity involves dredging, dredge soils disposal or transporting dredge spoils by water...." *See* 38 M.R.S.A. § 480–D(8) & (9) (1989 & Supp.1991).

    Although standard 9 was not in effect at the time of Murphy's application, its limiting language further illustrates the Legislature's ability to express its intention to limit the application of any of the standards set forth in § 480–D.

ties adjacent to coastal wetlands may be construed as an indication that the Legislature did not intend to place any limits on the application of the standards to such an activity.

In interpreting a statute, we are not limited to the application of the plain meaning rule. Rather, the Court will ascertain the real purpose of the legislation. *Bangor Hydro–Elec. Co. v. Board of Environmental Protection*, 595 A.2d 438, 442 (Me. 1991). The purpose of the NRPA is clearly set forth in § 480–A:

> The Legislature finds and declares that the State's rivers and streams, great ponds, fragile mountain areas, freshwater wetlands, significant wildlife habitat, coastal wetlands and coastal sand dunes systems are resources of state significance. These resources have great scenic beauty and unique characteristics, unsurpassed recreational, cultural, historical and environmental value of present and future benefit to the citizens of the State and that uses are causing the rapid degradation and, in some cases, the destruction of these critical resources, producing significant adverse economic and environmental impacts and threatening the health, safety and general welfare of the citizens of the State.

> The Legislature further finds and declares that there is a need to facilitate research, develop management programs and establish sound environmental standards that will prevent the degradation of and encourage the enhancement of these resources....

38 M.R.S.A. § 480–A (1989).

The standards set forth in § 480–D are designed to ensure that certain potentially detrimental activities do not further damage Maine's natural resources. The danger of erosion is only one of the dangers that the statute was designed to guard against. It is unlikely that the Legislature intended that activities taking place adjacent to coastal wetlands would receive permits on the mere showing that unreasonable erosion would not take place, despite the fact that the activity may violate one of the other enumerated standards. Limiting review of these activities to the possibility of soil erosion, as Murphy seeks here, would lead to such a result. Murphy's position impliedly requires the Board to issue a permit even if the activity, for example, increases flooding so long as it does not cause unreasonable erosion of the soil.

In order to implement the stated purpose of the Act, the statute should be broadly construed. In fact, environmental statutes are generally given a broad, liberal interpretation in order to afford the full protection of the Act which is being construed. N. Singer, *Sutherland Statutory Construction*, § 75.06 (4th Ed.1986).

■ Furthermore, the construction of a statute by the agency charged with its enforcement is entitled to great deference. *Bar Harbor Banking & Trust Co. v. Bureau of Consumer Protection*, 471 A.2d 292, 296 (Me.1984). Although an administrative interpretation is never conclusive on the court, it should not be lightly disregarded unless the statute plainly compels a contrary result. *See Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me.1991); *Soucy v. Board of Trustees of Maine State Retirement System*, 456 A.2d 1279, 1281 (Me.1983). Since the conclusions of both the DEP and the Board are not plainly contrary to the statute's language and purpose, we should defer to their administrative interpretation.

■ Moreover, even if we were to adopt Murphy's position and hold that the only standard to be applied in this case is that concerning soil erosion, there is, nevertheless, adequate evidence in the record that the proposed construction activity may cause an unreasonable amount of soil erosion under § 480–D(2), thereby supporting the denial of Murphy's permit application.

## II.

■ Murphy next argues that the Superior Court correctly concluded that the Board of Environmental Protection, in issuing its decision, failed to enumerate sufficient findings of fact to enable him to adequately determine the reasons for the deci-

sion or to allow a reviewing court to properly assess the denial.

[8] Under the Administrative Procedure Act, all agency decisions made at the conclusion of an adjudicatory proceeding must "include findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision." 5 M.R.S.A. § 9061 (1989). However, this section does not require an agency to make a detailed incident-by-incident fact finding. *Merrow v. Maine Unemployment Ins. Comm'n*, 495 A.2d 1197, 1202 (Me.1985). Although there was no adjudicatory proceeding conducted in this permit application process, the Board did issue a written decision containing its findings. Contrary to Murphy's contention and the conclusions of the Superior Court, the Board's decision adequately sets forth detailed findings sufficient to properly apprise the parties and the public of the basis for its decision.

### III.

■ Finally, the Superior Court denied Murphy's motion to admit the transcription of a tape recording of the Board's deliberations. The Court based its decision on a number of grounds: (1) the transcript is incomplete; (2) the speakers are not identified; (3) it includes legal advice given to the Board; and (4) it includes merely thoughts of Board members.

Murphy's motion was made pursuant to Rule 80C(f) of the Maine Rules of Civil Procedure which provides that:

> The agency shall file the complete record of the proceedings under review as provided by 5 M.R.S.A. § 11005. If the petitioner believes that the record filed by the agency either is incomplete or overinclusive, the petitioner shall serve notice upon the agency within 10 days

after the record is filed.... If the parties cannot agree, the petitioner may request that the court modify the contents of the record.

Under Rule 80B(e), the record "*shall* include the application or other documents that initiated the agency proceedings and the decision and findings of fact that are appealed from, and the record *may* include any other documents or evidence before the governmental agency and a transcript or other record of any hearings." (emphasis added). Under Rule 80B(e), while Murphy's initial application and the Board's decision were required to be made part of the complete record, the transcript was not required.

■ The Administrative Procedure Act leaves it to the discretion of the trial court to determine whether additional evidence is necessary to complete the record. We review the trial court's denial to admit evidence solely for abuse of discretion. *Carl L. Cutler Co. v. State Purchasing*, 472 A.2d 913, 918–19 (Me.1984). In this case, the Superior Court's refusal to admit a partial and incomplete transcript was not an abuse of discretion.

The entry is:

Judgment vacated.

Remanded to the Superior Court for entry of a judgment affirming the decision of the Board of Environmental Protection.

All concurring.