**2000 ME 129**

**Leon A. HUTCHINSON**

v.

**CARY PLANTATION.**

Supreme Judicial Court of Maine.

Argued June 12, 2000.
Decided June 30, 2000.

Roger L. Huber, Esq., (orally), Eaton Peadbody Bradford & Veague, P.A., Bangor, for plaintiff.

Richard C. Cleary, Esq., (orally), Cleary & Gordon, P.A., Houlton, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

SAUFLEY, J.

[¶ 1] Leon A. Hutchinson appeals from the judgment of the Superior Court (Aroostook County, *Pierson, J.*) affirming a denial by the Assessors of Cary Plantation of Hutchinson's renewal application for a permit to operate a septage disposal and land application facility. Because we conclude that the Assessors exceeded their authority in arriving at their decision, we vacate the judgment and remand to the Superior Court for remand to the Assessors for further consideration consistent with our opinion.

## I.  BACKGROUND

[¶ 2] Leon Hutchinson has operated a septage disposal facility in Cary Plantation since 1994. Along with a number of trucks that transport the sewage, the facility includes a storage building, in which sewage was temporarily stored, and a land application site, on which the sewage was ultimately placed for final disposal. Hutchinson's initial license was for a five-year term beginning February 14, 1994. As the expiration of his license approached, Hutchinson sought a renewal on August 23, 1998.

[¶ 3] In order to renew his license, Hutchinson was required to obtain site approval from both the Department of Environmental Protection and from the local municipality. *See* 38 M.R.S.A. § 1305(6) (Supp.1999). The statute does not require that the site approvals be obtained in any particular order. *See id.* Apparently at the instruction of the Assessors, Hutchinson first sought approval from the Department. The Department approved the renewal on March 15, 1999, with several conditions.

[¶ 4] Hutchinson then sought approval from the Assessors. Because the Cary Plantation has not adopted local zoning or land use controls that are applicable to the septage site, the Assessors were required to base their review upon the Department's septage management rules. *See* 38

M.R.S.A. § 1305(6). Whether the Assessors were authorized to require Hutchinson's compliance with all or only particular sections of those rules is the issue before us.

[¶ 5] The Assessors concluded that they were not limited to particular sections of the rules in judging Hutchinson's application and, after hearing, denied the application. In a written decision, they found, in pertinent part, that: (1) Houlton Septic Service had operated after its license had expired without approval by the municipality; (2) Leon Hutchinson had not demonstrated that he had implemented a lime stabilization program; (3) the facility contaminated the ambient air and created a nuisance to its neighbors; (4) Hutchinson and Bruce Folsom, the owner of Houlton Septic Service,[1] had previously failed to comply with Department regulations; (5) Houlton Septic Service had not installed sewage screening as required by Department regulations; and (6) neither Hutchinson nor Folsom had demonstrated to the Assessors' satisfaction the financial or technical capacity to operate the facility properly. After his application was denied, Hutchinson submitted a request for reconsideration. The Assessors did not act on the motion.

[¶ 6] Hutchinson then appealed to the Superior Court pursuant to 30–A M.R.S.A. § 7060(2)(E)(2) (1996) and M.R. Civ. P. 80B, contending that the Assessors had exceeded their authority in applying the Department's Septage Management Rules.[2] Although the Superior Court found that the Assessors had misapplied the law when they found that Houlton Septic Service had operated without a license, it ultimately concluded, contrary to Hutchinson's contentions, that the Assessors had not exceeded their authority in determining whether to issue the renewal license. The court affirmed the decision of the Assessors, and this appeal followed.

## II. DISCUSSION

[¶ 7] When the Superior Court acts as an intermediate appellate court, we review the underlying decision directly for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *See Herrick v. Town of Mechanic Falls,* 673 A.2d 1348, 1349 (Me.1996). Thus, we review the decision of the Assessors of Cary Plantation directly.

[¶ 8] We must determine whether the authorizing statute, 38 M.R.S.A. § 1305(6), permits a municipality to undertake the same review as that performed by the Department of Environmental Protection or restricts the scope of the municipality's review.

[¶ 9] The plain language of section 1305(6) answers the question. Section 1305(6) provides in pertinent part:

> In the absence of applicable municipal ordinances and local zoning and land use controls, the municipality *shall base its approval of the site on compliance with the siting and design standards* in the department's rules relating to septage management.[3]

---

1. There was some controversy over exactly who was operating the disposal facility. Apparently, Hutchinson operated the disposal site itself, and Bruce Folsom operated Houlton Septic Service—thus, it was Folsom who collected the waste and transported it to Hutchinson's facility. For the purposes of this case, the parties do not appear to distinguish between Hutchinson's and Folsom's activities, and we do not distinguish between them here.

2. Title 30–A, section 7060(2)(E)(2) authorizes an appeal, as provided in 30–A M.R.S.A.

§ 2692(3)(G) (1996), from a denial of a permit under an ordinance enacted by a plantation. Here, although the decision of the Assessors was not made under its own ordinance, it was made under the statutory provision applicable in the absence of such an ordinance, and the decision was properly reviewable by the Superior Court.

3. When the municipality has promulgated ordinance provisions regarding septage management, the statute provides: "The municipal officers shall approve, after hearing, any such private [septage] site if they find that the

38 M.R.S.A. § 1305(6) (emphasis added). By this language, the Legislature has expressly limited municipalities to a review of compliance with the siting and design standards set out in the rules of the Department when considering the approval or reapproval of a site.

[¶ 10] Notwithstanding the plain language of section 1305(6), Cary Plantation urges us to conclude that its review was not limited by section 1305(6) to siting and design standards. We review the construction of a statute de novo and determine its meaning as a matter of law. *See Estate of Jacobs,* 1998 ME 233, ¶ 4, 719 A.2d 523, 524.

> In general, the starting point in interpreting a statute is the statutory language itself. Unless the statute itself reveals a contrary legislative intent, the plain meaning of the language will control its interpretation. To that end, the particular words used in the statute must be given their plain, common and ordinary meaning.

*Murphy v. Board of Envtl. Protection,* 615 A.2d 255, 258 (Me.1992) (citing *Perry v. Hartford Accident & Indem. Co.,* 481 A.2d 133, 138 (Me.1984); *Keene v. Fairchild Co.,* 593 A.2d 655, 657 (Me.1991); *Phelps v. President & Trustees of Colby College,* 595 A.2d 403, 405 (Me.1991)).

[¶ 11] There is no ambiguity or contradictory intent in the language at issue. These words may be given their plain common and ordinary meaning. Applying that meaning to the dispute at bar, the Assessors are authorized to undertake a review of Hutchinson's compliance only as it relates to the Department's "siting and design standards."⁴ 38 M.R.S.A. § 1305(6).

[¶ 12] We look then to the Department's rules to determine which provisions do, in fact, set forth siting and design standards. The Department's Septage Management Rules may be divided into three principal areas: (1) licensing requirements, (2) septage land requirements, and (3) septage storage requirements. The land and storage related portions of the rules include particular sections regulating the siting and design of septage facilities. *See* Code Me. R. ch. 420, §§ 4, 5, 11, 12. Sections 4 and 5 address the siting of land application sites. These sections regulate such matters as construction materials, design requirements, erosion controls, access and traffic controls, and soil pH and make certain other requirements before septage may be applied on a given site. Sections 11 and 12 address the design and siting, respectively, of storage facilities and contain provisions that categorically exclude the placement of storage facilities in certain areas, require certain buffer zones between a facility and water sources, and address other matters such as soil drainage and slopes.

[¶ 13] We conclude that the "siting and design standards in the Department's rules relating to septage management," 38 M.R.S.A. § 1305(6), are currently found in those four sections of the Department's rules, *see* Code Me. R. ch. 420, §§ 4, 5, 11, 12. Accordingly, pursuant to section 1305(6), the Assessors were limited to considering these sections when deciding whether to approve Hutchinson's renewal application.⁵

[¶ 14] The Assessors, however, incorrectly understood that they were authorized to consider matters beyond the siting and design of the facility. For example, the Assessors explicitly found that Hutchinson had violated section 3(C) of the Sep-

---

site complies with municipal ordinances and with local zoning and land use controls." 38 M.R.S.A. § 1305(6). Cary Plantation has not promulgated a septage management ordinance.

4. Cary Plantation does not challenge the Legislature's authority to designate specific areas of review by the municipality. *See* Me. Const. art. VIII, pt. 2, § 1; 30-A M.R.S.A. § 3001 (1996).

5. Because the Department may amend its rules from time to time, the sections implicating siting and design standards may change.

tage Management Rules by creating a nuisance. *See* Code Me. R. ch. 420, § 3(C)(1)(d). Similarly, the Assessors considered the financial capacity of the applicant, a factor also addressed in the "licensing requirements" chapter, not in any of the siting and design provisions. *See* Code Me. R. ch. 420, § 3(C)(1)(e). Unless financial limitations have resulted in the applicant's inability to meet its burden on siting and design standards, the Assessors may not base a denial on financial concerns generally because the municipality has no authority to undertake a general review of financial issues. That task has been delegated to the Department alone.

[¶ 15] Although the Assessors also considered factors that were within the scope of their review authority, it is not possible for us to determine what they would have concluded had they limited themselves to a review of siting and design as required by law.[6] We therefore vacate the denial of Hutchinson's license, and remand the matter to the Assessors for further consideration. The Assessors may, in their discretion, take additional evidence before rendering a decision.

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the Assessors of Cary Plantation for action consistent with this opinion.

---

6. Because we remand for further consideration by the Assessors, we do not reach any other errors asserted by the parties.