STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-279
~~DHM - KEN - 2/~~

JERALD SMITH,

Petitioner

v.

**DECISION AND ORDER**

INHABITANTS OF THE
TOWN OF PITTSTON,

Respondent

This matter is before the court on Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment. Defendant moves for summary judgment on Counts IX and XII of the Plaintiff's amended complaint; Plaintiff moves for summary judgment on Counts IX, XI and XII. By Decision and Order of this court dated June 29, 2001, Defendant was granted summary judgment on Counts I, II, III, IV, V, VI, VII and VIII of the complaint; Count X was voluntarily dismissed without prejudice.

**I.     Facts and Procedural History**

The undisputed history of the parties interactions may be summarized as follows: In April 1999, Plaintiff Jerald Smith attended a meeting of the Town of Pittston municipal officers to inform them of his intent to spread septage on land he had purchased on Hunts Meadow Road. On May 12, 1999, he attended another municipal meeting at which time he was referred to the Pittston Planning Board for consideration of his request. At a Planning Board meeting on May 27, 1999, Smith orally presented

1

his plan, although he was not listed on the meeting's agenda and he had not filed an application. The Planning Board suggested he submit a new business application in order to be officially placed on the next month's agenda. On June 23, 1999, the Town certified a petition that sought to have an article placed on the warrant for a special town meeting which would establish a 180 day moratorium on the spreading of septage within the Town's boundaries. Smith attended a Planning Board meeting the next day, June 24, to present a new business application and a copy of a Maine Department of Environmental Protection (DEP or the Department) application for a septage spreading permit. The Board voted to table Smith's request for a determination of completeness pending consultations with Maine Municipal Association regarding the Board's reviewing authority.

On July 27, 1999, the voters of Pittston approved the 180 day moratorium on the dumpling of septage on any property within the Town. On August 4, 1999, Smith attended another meeting of the municipal officers and requested they sign his completed DEP application, which would allow DEP to review Smith's application in advance of the Town's review. Citing the new moratorium on septage spreading, the Town declined to sign the DEP application.

On October 26, 1999, the Town certified a petition to place an article on a warrant for special town meeting proposing a new ordinance prohibiting the spreading of septage in the Town. On November 24, 1999, Smith formally submitted a completed DEP application to the municipal officers and requested they sign the form certifying that the DEP should perform its review of his application prior to the Town. At a special town meeting held on December 22, 1999, the voters of the Town approved the Town's first ordinance prohibiting the spreading, storing or dumping of residential or

commercial septage. On the same day, the municipal officers signed the certification page of Smith's DEP application.

On March 18, 2000, the voters of the Town approved a second septage ordinance which repealed the version approved on December 22, 1999. On October 19, 2000, a third septage ordinance was approved which repealed the previous ordinance. It is this final version of Pittston's septage ordinance that now comes under judicial scrutiny.

## II.    Discussion

The issues before the court may summarized as follows: (1) whether the most recent Pittston ordinance banning the spreading, storing or dumping of septage is illegal  or unconstitutional; (2) whether the ordinance can be severed by means of a savings clause, thereby allowing the substance of the ordinance to be ruled invalid while preserving the provision that repeals the two prior ordinances, and; (3) whether the plaintiff's application was "pending" prior to the passage of the ordinance.

The Plaintiff contends the field of septage regulation is preempted by the state and the Pittston ordinance is therefore invalid.  He argues that the Maine Hazardous Waste, Septage and Solid Waste Management Act, 38 M.R.S.A. §§ 1301 - 1371 (Supp. 2001), plainly contemplates the State's intention to regulate septage, notwithstanding the exclusion of word "septage" from the statutory definition of solid waste. Specifically Smith takes the position that the Town, by banning the dumping or spreading of septage, has frustrated the purpose of 38 M.R.S.A. § 1305(6) which provides that a "municipality shall provide for the disposal of all refuse, effluent, sludge and any other materials from all septic tanks and cesspools located within the municipality. In addition, any person may provide a site for disposal of septage." Smith further points out that municipalities are statutorily prohibited from enacting

stricter standards than those contained in the Solid Waste Management Act. *See* 38 M.R.S.A. § 1310-U.

The Defendant argues that Maine's home rule provisions are expansive and should be read to allow the Town's ordinance. Pittston maintains that heavy regulation in an area should not be interpreted to mean the legislature intended to "exclusively occupy the field." *School Comm'n of Town of York v. Town of York*, 626 A.2d 935, 941 (Me. 1993) (citations omitted). Pittston also claims it has met the mandate of section 1305(6) by contracting with local disposal companies and wastewater treatment plants to provide for disposal of septage. Pittston refutes the applicability of section 1310-U to its septage ordinance by re-emphasizing the exclusion of septage from the statutory definition of solid waste.

The standard of review for determining whether local ordinances are preempted by state law is contained in 30-A M.R.S.A. § 3001(3) (Supp. 2001) which states that "[t]he Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law." Maine home rule statute provides that municipalities may exercise "any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication." 30-A M.R.S.A. § 3001. The Law Court has provided further guidance on home rule by stating that "if the legislature intended to create a comprehensive and exclusive regulatory scheme, then [a] municipal ordinance [at odds with that scheme] must fail as a violation of the Home Rule statute." *Midcoast Disposal, Inc. v. Town of Union*, 537 A.2d 1149, 1150 (Me. 1988) (quoting *Tisei v. Town of Ogunquit*, 491 A.2d 564, 570 (Me. 1985).

The Hazardous Waste, Septage and Solid Waste Management Act clearly exhibits

4

the State's desire to provide for safe waste disposal. Septage, while excluded from the statutory definition of solid waste,[1] remains heavily regulated by the Department of Environmental Protection. DEP requirements for licensure of septage facilities read, in relevant part:

> (1) Septage Land Application. It is unlawful for any person to land apply septage unless that person:
>> (a) has a valid Septage Land Application License issued by the Department pursuant to 38 M.R.S.A. § 1301, *et seq*. and this Chapter; or
>> (b) is exempt from licensing pursuant to 38 M.R.S.A. § 1306(2).

DEP Septage Management Rules, Chapter 420 (2)(A), eff. Sept. 8, 1997. The exemption provided under section 1306(2) applies only to land spreading of septage from a single family residence onto land surrounding that residence; the plaintiff's intended use clearly falls within the DEP's licensing requirements listed above. The DEP's licensing guidelines are comprehensive and detailed, conditioned upon adequate soils mapping and analysis, traffic studies, an operating plan, and proof of financial and technical ability in addition to construction and design standards. *Id.* ch. 420 (3-12).

The Law Court has also established a clear standard for determining preemption in the context of home rule:

> [T]he Legislature has conveyed a plenary grant of the state's police power to municipalities, subject only to express or implied limitations supplied by the Legislature.... Municipal legislation will be invalidated, therefore, only when the Legislature has expressly prohibited local regulation, or when the Legislature has intended to occupy the field and the municipal legislation would frustrate the purpose of state law.

---

[1] 38 M.R.S.A. §1303-C(29) (Supp. 2001).

*International Paper Co. v. Town of Jay*, 665 A.2d 998, 1001-02 (Me.1995). Clearly, the Town of Pittston has "frustrated the purpose" of state regulation in this area by prohibiting all forms of septage spreading within its confines.

The Legislature recently created a limited function for municipalities in the regulation of septage land application. L.D. 1449, *now codified* at 38 M.R.S.A. § 1304(17) (Supp. 2001) (approved May 23, 2001). The DEP Commissioner is currently authorized to "develop guidance to municipalities regarding the regulation of septage and sludge land application . . . ." *Id*. It would be incongruous for the Legislature to allow municipalities to play a limited role in the regulation of septage land spreading while also allowing them to completely ban the activity by local ordinance.[2] *See Sawyer Environmental Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 32, 760 A.2d 257, 265. Accordingly, this court finds that the Town of Pittston has exceeded its home rule authority by passing an ordinance prohibiting the spreading, storing or dumping of septage.

The Plaintiff urges the court to use the savings clause from the ordinance to sever and preserve that portion of the ordinance that addresses the repeal of prior ordinances in the event the substance of the ordinance is stricken. The Town has not responded to this argument either in its brief or at oral argument. The unstated rationale beneath the Plaintiff's argument appears to be a fear that an earlier version of the ordinance could resurrect itself and be applied to his septage spreading application.

---

[2] There is no dispute that Maine law allows for municipal ordinances regarding septage management. 38 M.R.S.A. § 1305(6) provides for municipal approval of septage site sites if it is found that "the site complies with municipal ordinances and with local zoning and land use controls." Municipal review in the absence of local ordinances is limited to the Department's siting and design standards. *Hutchinson v. Cary Plantation*, 2000 ME 129, ¶ 11, 755 A.2d 494, 497. The Town of Pittston's ordinance does not read as a septage management ordinance, but as a complete prohibition of septage spreading activities.

This fear is ungrounded.

The Pittston ordinance represents the most recent indication of the intent of the municipality. Passage of this ordinance effectively repealed any prior versions in existence at the time. Invalidation of the ordinance by the court does not automatically revive previous iterations as implied here by the Plaintiff. Invalidation simply leaves the Town of Pittston with no valid septage ordinance in place.

This decision renders moot the plaintiff's argument that his application was pending prior to passage of the Town's septage spreading ban. The governing statute directs a municipality without ordinances dealing with septage to follow the DEP guidelines. 38 M.R.S.A. § 1305(6). As this court's order will leave the Town without a valid septage ordinance, the plaintiff's application may be reviewed by the municipal officers under DEP siting and design guidelines. *See Hutchinson v. Cary Plantation*, 2000 ME 129, ¶ 9, 755 A.2d 494, 496.

## III.    Conclusion

Therefore, for all the reasons above, the entry shall be:

Defendant's motion for summary judgment on Count IX is DENIED; Defendant's motion for summary judgment on Count XII is granted. Plaintiff's motion for summary judgment on Count IX is granted; Plaintiff's motion for summary judgment on Counts XI and XII is DENIED; summary judgment entered for defendant on Count XI.

Dated:  Feb. _5_, 2002

_____
Donald H. Marden
Justice, Superior Court

7

Date Filed __12/23/99__    __Kennebec__    Docket No. __CV99-279__
County

Action __Constitutional/Civil__

# J. MARDEN

Jerald Smith                    VS.    Town of Pittston, et als

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| James E. Mitchell, Esq.<br>86 Wintrhop Street<br>Augusta, Maine 04330 | ~~C.H. Spurling, Esq. (1/27/00)~~<br>~~2 Church Street~~<br>~~Gardiner, Maine 04345~~<br><br>─ Thomas B Federle Esq (1/12/99) et als<br>61 Winthrop St<br>Augusta Me 04330<br>─Gregory Cunningham Esq  (5/3/00)<br>PO Box 9729<br>Portland Me 04104<br>Lee Bragg, Esq. |

| Date of Entry | |
|---|---|
| 12/29/99 | Complaint, filed. s/Mitchell, Esq.  (filed 12/21/99)<br>Case File Notice mailed to atty.<br>Original Summonses with return service made upon Town of Pittston, Jonathan Webb, Stanley Byrne and William Wallentine, filed. |
| 1/12/00 | Motion for intervention (rule MRCP 24 (a)) filed.  s/Federle Esq<br>Proposed order on motion for intervention (Rule MRCP 24(a)) filed.<br>Affidavit of Arlene Shea filed.<br>Affidavit of Ralph Shea filed.<br>Affidavit of George Shaw filed.<br>Affidavit of Alexander Moulton filed.<br>Affidavit of Joe Caputo filed.<br>Affidavit of Alan Philbrook filed.<br>Affidavit of Justin Smith filed.<br>Affidavit of Carol Smith filed.<br>Answer of Intervenors Arlene Shea, Ralph Shea, George Shaw, Alexander Moulton, Joe Caputo, Alan Philbrook, Justin Smith and Carol Smith filed. |
| 1/28/00 | Answer to Complaint, filed. s/Spurling, Esq. (filed 1/27/00)<br>Motion to Dismiss , filed. s/Spurling, Esq. |
| 1/31/00 | SCHEDULING ORDER, Marden, J.<br>"Scheduling Order filed.  Discovery deadline is October 2, 2000."<br>Copies mailed to attys of record. |
| 2/1/00 | Opposition to Motion to Intervene, filed. s/Spurling, Esq. |
| 2/4/00 | Memorandum in Support of Motin to Strike, filed. s/Mitchell, Esq. (filed 2/3/00)<br>Answer and Motion to Strike Motion to Intervene by Eight Individuals, filed s/Mitchell, Esq. (filed 2/3/00) |
| 2/8/00 | Reply Memorandum to Defendant's Oppositin to Motion to Intervene, filed. s/Federle, Esq. |