STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: AP-07-015
RAC-CUM-10/12/2007

JEANNE M. NAJEMY

and

RICHARD N. BRYANT

Petitioners,

**80C APPEAL**

v.

BOARD OF ENVIRONMENTAL
PROTECTION

Defendant,

SPURWINK WOODS, LLC

Party in Interest,

LYNDON KECK and HOLLY HOFFMAN

Parties in Interest.

This case comes before the Court on Petitioners Jeanne M. Najemy and
Richard N. Bryant's appeal of a governmental action pursuant to M.R. Civ. P.
80C.

## BACKGROUND

Petitioners Jeanne M. Najemy and Richard N. Bryant (collectively
"Petitioners") appeal a final agency order (the "Order") issued by the Board of
Environmental Protection ("BEP") approving a 42 unit single-family and
condominium subdivision in Cape Elizabeth, Maine (the "Town") formerly
referred to as Spurwink Woods and now renamed Cottage Brook (the "Project").

1

Spurwink Woods, LLC ("Developer"), Lyndon Keck and Holly Hofmann are Parties in Interest.

Petitioners reside in the immediate vicinity of the Project and opposed the Project during subdivision review before the BEP, the Department of Environmental Protection ("DEP") and the Cape Elizabeth Planning Board (the "Planning Board").

The Order, issued on February 1, 2007, approved the Project under the Stormwater Management Law and Natural Resources Protection Act. However, the BEP determined that the Project did not require review under the Site Location of Development Law, 38 M.R.S.A. §§ 481- 490 ("Site Location Law"). Site Location Law regulates development that "may substantially affect the environment." 38 M.R.S. § 482(2) (2007). Because the BEP made this determination, the Project was not subject to recently developed stormwater quality standards that Petitioners contend would force design changes to the Project, thereby providing additional protection to the surrounding Trout Brook watershed and additionally to Petitioners' interest in their home.

The BEP determined that the Project was not a "regulated development" pursuant to 38 M.R.S.A. § 482(2) and thus was not subject to Site Location Law. This determination was based on findings that "the Project neither (i) involves three acres or more of 'structure' as defined in § 482(6)(B), nor (ii) constitutes a 'subdivision' of more than twenty acres as defined in § 482(5). Petitioners contend that "these conclusions resulted from erroneous interpretations of the statute, or were the result of an arbitrary and capricious abuse of discretion and unsupported by competent evidence." Petitioners further contend that they were denied meaningful process to contest BEP's approval of the Project.

2

## DISCUSSION

### I.    Standard of Review

The Court may only reverse or modify an administrative agency's decision if it is based upon "bias or error of law," is "unsupported by substantial evidence on the whole record," is "arbitrary and capricious," or involves an "abuse of discretion" by the agency. 5 M.R.S.A. § 11007(4)(C)(4)-(6). According to the Law Court, the power to review decisions of the Commission is confined to an examination of "whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, 1998 ME 177,¶ 6, 714 A.2d 818, 820.

Additionally, the Court cannot "substitute its judgment for that of the agency on questions of fact." 5 M.R.S.A. § 11007(3). "[U]nless the record before the Commission compels a contrary result," the Court will uphold the agency decision. *McPherson*, 1998 ME 177, ¶ 6, A.2d at 820. Finally, "the burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Me. Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982).

With respect to statutory interpretation, great deference is afforded to an agency's interpretation of a statute it is charged to enforce. *Murphy v. Bd. of Env. Prot.*, 615 A.2d 255, 259 (Me. 1992) (*citing Bar Harbor Banking & Trust Co. v. Bureau of Consumer Prot.*, 471 A.2d 292, 296 (Me. 1984)). "Although an administrative interpretation is never conclusive on the court, it should not be lightly disregarded unless the statute plainly compels a contrary result." *Id.* (citations omitted). "When there is ambiguity, however, we defer to the interpretation of a

3

statutory scheme by the agency charged with its implementation as long as the agency's construction is reasonable. *Conservation Law Found., Inc., v. Dept. of Env. Prot.*, 2003 ME 62, ¶ 23, 823 A.3d 551, 559. Moreover, the meaning of a statute must be interpreted in light of the purpose for the legislation. *Murphy*, 615 A.2d at 259.

## II. Did the BEP Improperly Find the Project Was Not Within the Jurisdiction of Site Location Law?

Petitioners contend that the BEP erroneously found that the Project contained less than the three acres of structure and that it was not a subdivision as defined by Site Location Law.

### a. Did the BEP Erroneously Find that The Project Contains Less Than Three Acres of Structure as Defined in § 482(6)(B)?

Under Maine law, if any development contains more than three acres of structure, as defined by 38 M.R.S.A. § 482(6), it falls within the purview of Site Location Law. 38 M.R.S.A. § 482(6). Structure is defined as:

> Buildings, parking lots, roads, paved areas, wharves or areas to be stripped or graded and not to be revegetated that cause a total project to occupy a ground area in excess of 3 acres. Stripped or graded areas that are not revegetated within a calendar year are included in calculating the 3-acre threshold.

*Id.* Petitioners claim that the DEP failed to consider structures during preliminary hearings nor were structures fully considered on BEP appeal. Further, BEP calculations of structure for the Project were inaccurate because they failed to include "substantial permanent improvements shown on the October 2006 plan." Specifically, the BEP failed to consider 1) the trail system as structure; 2) a portion of South Street; 3) a sidewalk to be constructed along South Street; and 4) a retaining wall to be constructed at the northerly end of

4

South Street (collectively the "omitted structures"). Had the omitted structures been considered, it is asserted, the Project would fall within the purview of Site Location Law.

### i. Did the DEP and the BEP Fail to Consider Relevant Structures?

Petitioners assert that the omitted structures were repeatedly pointed out at the BEP appellate hearing on February 1, 2007 based on Developer's post-appeal submissions, but that the BEP failed to address the concerns. Further, they assert, prior to the appeal, specific structure calculations were not considered by the DEP, which omissions amount to arbitrary and capricious calculations, unsupported by the evidence in the record.

In response the BEP points to DEP findings of fact finding 2.80 acres of structure at the Project. These findings were supported by a report requested from Developer and prepared by Developer's consultant, John D. Mitchell, and by DEP employee notations on some of the plans. That estimate was revised to 2.96 acres in a September 1, 2006 letter from Mitchell reflecting the BEP's willingness to revisit the calculations. Accordingly, Site Location Law was considered before the DEP and the BEP.

### ii. Were the BEP's Findings of Fact Sufficient to Apprise Interested Parties of the Basis for Their Decision?

"Under the Administrative Procedure Act, all agency decisions made at the conclusion of an adjudicatory proceeding must 'include findings of fact sufficient to apprise the parties of any interested member of the public of the basis for the decision." *Murphy*, 615 A.2d at 260 (*quoting* 5 M.R.S.A. § 9061

5

(1989)). This does not, however, "require an agency to make a detailed incident-by incident fact finding." *Id.*

In this case the BEP, in the February 2007 Order, did address in detail, the basis for their decision to find less than 3 acres of structure. Consequently, the BEP met its burden of providing sufficient findings to apprise Petitioners of the basis of their decision.

### iii. Did the DEP and BEP Erroneously Exclude Certain Structures in Their Calculations?

Petitioners listed omitted structures that they contend bring the Project well within the scope of Site Location Law. The BEP contends, however, that Petitioners have failed to read the law in context regarding subdivisions and structures and thus have misinterpreted the requirements under Site Location Law. Specifically, that single-family residential subdivisions are excluded from structure calculations. *See* 38 M.R.S. § 488(17) (2007).[1] Consequently, when considering a subdivision with both single and multi-family units, the DEP "carefully calculates" those structure areas not associated with the single-family units and determines if the 3-acre structure threshold has been met.

Petitioners take issue with the DEP and BEPs categorization of omitted structures as associated with single-family units, or otherwise exempt from calculation. However, the BEP specifically addresses each contested structure and articulates the basis for their decision with support from the record.

---

[1] 17. **Structure area within residential lots.** Buildings, roads, paved areas or areas to be stripped or graded and not revegetated that are located within lots used solely for single-family residential housing are not counted toward the 3-acre threshold described in section 482, subsection 6, paragraph B for purposes of determining jurisdiction. A road associated only with such lots is also not counted toward the 3 –acre threshold. For purposes of this subsection, "single-family residential housing" does not include multi-unit housing such as condominiums and apartment buildings.

6

Accordingly, BEP's calculations are neither arbitrary nor capricious and are based on a reasonable interpretation of the statute.

### b. Did the BEP Erroneously Find that The Project Does Not Constitute a 'Subdivision' of More Than Twenty Acres as Defined in § 482(5)?

The land upon which the Project is situated has consistently been referred to as a 24.97-acre parcel. A significant subdivision is defined as:

> A "subdivision" is the division of a parcel of land into 5 or more lots to be offered for sale or lease to the general public during any 5-year period, if the aggregate land area includes more than 20 acres; except that when all lots are for single-family, detached, residential housing, common areas or open space a "subdivision" is the division of a parcel of land into 15 or more lots to be offered for sale or lease to the general public within any 5-year period, if the aggregate land area includes more than 30 acres. The aggregate land area includes lots to be offered together with the roads, common areas, easement areas and all portions of the parcel of land in which rights or interests, whether express or implied, are to be offered.

38 M.R.S. § 482(5) (emphasis added). Exceptions to the definition exist. Specifically not calculated into the aggregate acres are any "[p]ersonal, nonprofit transactions, such as the transfer of lots by gift. . . ."

In this case Developer has "gifted" 12.58 acres to the Town and thus, according to the BEP, the aggregate acreage is less than 20 acres. Petitioner counters that the 12.58 acres cannot be construed as a "gift" because Developer commercially gains from the conveyance by avoiding certain fees and by circumventing Site Location Law. Furthermore, they assert that residents will have rights or interests in the "gifted" lot and thus it should be included in the calculations.

7

According to the BEP, a general 20-acre threshold for subdivisions is an inaccurate reading of the law because the § 402(5) definition of subdivision has many interrelated factors. Moreover, though residents will have access to the "gifted" acreage, they have not been offered "rights" in it; meaning that they will have no more say over the management of the 12.58 acres than the public at large. Thus it should be excluded from the calculation.

This reading of the law is based in public policy. The BEP has determined, and has consistently read the law, to encourage developers' gifts of land to towns. The BEP is harmonizing town ordinances that incentivize such gifts in lieu of fees and restrictions with DEP laws, thus promoting efficient land-use and open space. This interpretation, they assert, serves the real purpose of the legislation.[2] *See Murphy*, 615 A.2d at 259.

This Court must show great deference to the determinations made by the BEP both as a matter of fact and as a matter of statutory interpretation. The Court thus determines that this reading of the law is not unreasonable.

III. **Were Petitioners Denied Sufficient Process to Fairly Contest the Order?**

Ultimately the Petitioners contend that the BEP failed to meaningfully address Petitioners' concerns because it did not remand Site Location Law issues

---

[2] 38 M.R.S.A. § 481 reads in pertinent part:

> The purpose of this subchapter is to provide a flexible and practical means by which the State, acting through the department, in consultation with appropriate state agencies, may exercise the police power of the State to control the location of those developments substantially affecting local environment in order to insure that such developments will be located in a manner which will have a minimal adverse impact on the natural environment with the development sites and of their surroundings and protect the health, safety and general welfare of the people.

8

to the DEP for further fact finding, but allowed the issue to be improperly considered on appeal, where Petitioners' bore the burden of proof.

The BEP stands by their fact-finding process and their conclusions. Petitioners were present and heard throughout the licensing process. Developer did bear his burden as evidenced by the Mitchell letter. Indeed the BEP asserts that they liberally allowed Petitioners to submit further evidence on appeal.

Though the DEP record is sparse surrounding Site Location Law there was some evidence in the record to support DEP conclusions. Because this Court cannot "substitute its judgment for that of the agency on questions of fact," 5 M.R.S.A. § 11007(3), and because the record does not compel a contrary result, this Court affirms the agency decision.

**The entry is:**

The February 1, 2007 Order of the Bureau of Environmental Protection approving the Cottage Brook Project is AFFIRMED.

DATE: _October 2, 2007_

Roland A. Cole
Justice, Superior Court

Date Filed _03-07-07_     CUMBERLAND     Docket No. _AP-07-15_

County

Action _ 80C APPEAL_

JEANNE M NAJEMY
RICHARD N BRYANT

BOARD OF ENVIRONMENTAL PROTECTION
SPURWINK WOODS LLC (PII)
LYNDON KECK (PII)
HOLLY HOFFMAN (PII)

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| RICHARD N BRYANT ESQ<br>20 YORK STREET SUITE 202<br>PORTLAND ME 04101<br>(207)871-7500 | PAUL F. DRISCOLL, ESQ.<br>P.O. BOX 4600 (Spurwink)<br>PORTLAND, MAINE 04112-4600<br>774-7000<br><br>MARGARET BENSINGER AAG (BOARD OF ENV. PRO)<br>6 STATE HOUSE STATION<br>AUGUSTA ME 04333-0006 |

D⁻⁺⁻ ⁿf